# Kentucky Central Life and Accident Insurance Co. v. Pennsylvania Labor Relations Board

*N. P. Snyder, N. R. Dutton, F. H. Knight* and *Morgan, Lewis & Bockius,* for plaintiff.

*T. M. Chidsey,* Attorney General, and *M. L. Rutherford* and *G. L. Reed,* for defendant.

BROWN, JR., P. J., January 21, 1948.—In this appeal by Kentucky Central Life and Accident Insurance Company from an order of the Pennsylvania Labor Relations Board certifying the Industrial and Ordinary Insurance Agents Council as the exclusive collective bargaining unit for the agents employed in the Company's Philadelphia District Office, the question presented is whether the Pennsylvania Labor Relations Board has jurisdiction to determine the unit appropriate for the purposes of collective bargaining or whether the National Labor Relations Board has exclusive jurisdiction of the subject matter.

The Industrial and Ordinary Insurance Agents Council, an affiliate of the American Federation of Labor, filed a petition with the Pennsylvania Labor

Relations Board, alleging that a question had arisen concerning the representation for the purposes of collective bargaining of the industrial agents employed in the Philadelphia District Office of the Kentucky Central Life and Accident Insurance Company, and requesting the Board to investigate the matter and certify the name of the representative selected by a majority of such employees in an appropriate unit. In accordance with the Board's order that an investigation be made, a hearing was held before one of its trial examiners. At this hearing, the Council requested that the Board certify for collective bargaining a unit composed of the industrial agents of the Company's Philadelphia District Office, and the Company moved that the petition be dismissed for the reasons, among others, that jurisdiction of the subject matter was vested exclusively in the National Labor Relations Board, and that the unit requested to be certified was inappropriate. Subsequently the Board issued a nisi decision and order, making findings of fact and conclusions, which in effect dismissed the Company's motions, and ordering that an election be held among all the industrial agents of the Company employed in its Philadelphia District Office to ascertain whether the Council should represent them exclusively for the purposes of collective bargaining with the Company. After argument upon the Company's exceptions to this decision and order, the Board issued its decision sur exceptions and order, denying the Company's contentions, and directing the taking of additional testimony. Following that hearing, and pursuant to the Board's direction, an election by secret ballot was held. The Board then issued a nisi order of certification, wherein the Council was certified as the exclusive representative of the employees within the unit consisting of the industrial agents employed in the Company's Philadelphia District Office whose debits lie wholly or in part within Pennsylvania. Exceptions thereto were filed by the

Company, and the Board in its final order of certification dismissed them, and decreed that the nisi order of certification be and remain absolute and final. From this order the present appeal was taken.

The Company has had no collective bargaining agreements with any labor organization. Approximately three months before the institution of the present proceedings, the Council filed with the National Labor Relations Board a petition requesting this Board to certify as appropriate for collective bargaining a unit comprising all the industrial agents of the Company in the State of Ohio. The National Board assumed jurisdiction of the controversy, fixed a date for the election, and issued its notice of election containing a sample ballot, but this election was never held due to the Council's actions. Another petition for certification of a bargaining unit composed of all the Company's agents employed in Ohio was filed with the National Board by the Council and an affiliated local union. A hearing was held on that petition before a hearing officer of the National Board. The Board issued its decision and direction of election, which contained findings of fact, among others, that the Company "is engaged in commerce within the meaning of the National Labor Relations Act", and directed that an election be held.

Kentucky Central Life and Accident Insurance Company, a corporation organized under the laws of the State of Kentucky, sells ordinary and industrial life insurance and industrial health and accident insurance. In addition to its home office at Anchorage, Kentucky, it operates twenty-two district offices located in six states: Kentucky, Ohio, Indiana, West Virginia, Delaware and Pennsylvania. The organization and operations of the Company are highly centralized, and there is complete identity of interest in its dealing with the public, and in the working terms and conditions of all of its agents, no matter in what states they function. All applications for policies of insurance received by

any agent anywhere are submitted to the home office, and every policy is prepared and issued from that office. Except for slight differences required by the laws of different states, the policies solicited by the agents are substantially alike everywhere.

A home office supervisor acts in the co-ordination and supervision of all district offices of the company in all six states, and this co-ordinator and supervisor audits the books at each district office. He works directly under the Company's president in the auditing of all district offices and with respect to all questions of policy arising between the home office and any district office. The manager of a district office has no authority to sign any contracts binding the Company whether such contracts be for a lease of office space, the hiring of new agents, or the discharging of agents.

Many of the Company's agents employed in an office in one state operate in another state. Two to four agents report to a Kentucky district office but operate in Indiana. Three to four agents from Ohio offices and an agent from the West Virginia office operate in Ohio, and others from both Ohio and Indiana operate in Kentucky. In the Philadelphia District Office, the office with respect to which the original petition was filed in this case, the Company employs thirty-six agents who operate in Philadelphia and four who operate from a sub-office in Wilmington, Delaware. The Wilmington sub-office in turn has a further sub-office in Chester, Pennsylvania, where two agents are employed. Approximately seventeen agents are employed in the Company's Pittsburgh District Office, its other office in Pennsylvania.

All agents, wherever they function, perform the same duties and are paid on the same basis, all payrolls being prepared at the home office. Working agreements and conditions, vacations and holidays, compensation for sickness and disability, and retirements and bonuses are matters of policy decided by the home office.

Kentucky Central Life and Accident Insurance Company is engaged in "commerce among the several States" and subject to regulation by Congress under the Commerce Clause of the Constitution. "[Its] business is not separated into [6] distinct territorial compartments which function in isolation from each other. Interrelationship, interdependence, and integration of activities in all the states in which [it] operate[s] are practical aspects of the insurance companies' methods of doing business." United States v. South-Eastern Underwriters Association et al., 322 U. S. 533, 541. A dispute between it and its agents concerning terms or conditions of employment, or concerning the association or representation of the agents in negotiating or arranging such terms or conditions, would affect interstate commerce, that is, would burden or obstruct such commerce or its free flow. Clearly, the Company is "engaged in interstate commerce within the meaning of the National Labor Relations Act: Act of July 5, 1935, 49 Stat. 449, 29 U. S. C. A. Section 151 et seq., 29 U. S. C. A. Section 159, et seq. Its operations have a substantial effect upon interstate commerce. Employer-employee relations with regard to the selection and determination of an appropriate bargaining unit, certification of a representative for purposes of collective bargaining and prevention of unfair labor practices are within the jurisdiction of the National Board." Pittsburgh Railways Company Substation Operators and Maintenance Employees' Case, 357 Pa. 379, 382.

It is equally clear that the Pennsylvania Labor Relations Board does not have concurrent jurisdiction with the National Labor Relations Board under the National Labor Relations Act to determine a unit of the agents of Kentucky Central Life and Accident Insurance Company appropriate for the purposes of collective bargaining. In Pittsburgh Railways Company Employees' Case, supra, at page 386, the Supreme Court of Pennsylvania held: "The clear implication of

the decision of the Supreme Court of the United States in Bethlehem Steel Co. et al. v. New York State Labor Relations Board, [330 U. S. 767], is that wherever the employer-employee relationship is one over which Congress has the power of regulation and with regard to which Congress has acted, state power is suspended and cannot constitutionally be exercised. To permit the exercise of state power in such circumstances would effectively negative the supremacy of Congressional legislation.

"The criterion to determine validity of the exercise of state power is not whether the agency administering federal law has acted upon the relationship in a given case; rather, it is whether Congress has asserted its power to regulate that relationship. The Pennsylvania Labor Relations Board could not constitutionally entertain the petition for determination of the bargaining agent. In so doing, it was acting upon subject matter, regarding which Congress had asserted its power of regulation and jurisdiction over which had properly been delegated to the National Labor Relations Board."

The National Labor Relations Act was amended in certain particulars by the Labor Management Relations Act (popularly known as the Taft-Hartley Act) : Act of June 23, 1947, 61 Stat. at L. 136, 29 U. S. C. §141 et seq. But no change was made in the definitions of the terms "commerce" and "affecting commerce" in section 2 of the earlier act (29 U. S. C. §152) by the same section of the later act (29 U. S. C. §152). Accordingly, Kentucky Central Life and Accident Insurance Company is engaged in interstate commerce under the Labor Management Relations Act, and its relations with its agents with respect to the selection and determination of a unit appropriate for the purposes of collective bargaining are within the jurisdiction of the National Labor Relations Board.

In support of the contention that the Pennsylvania Labor Relations Board has concurrent jurisdiction with the National Labor Relations Board of proceedings to select and determine a unit appropriate for the purposes of collective bargaining in situations involving interstate commerce, reliance was placed upon the provisions of the Labor Management Relations Act relating to the prevention of unfair labor practices. Thus, in section 10(a), which deals with the power of the National Labor Relations Board to prevent unfair labor practices, the word "exclusive" appearing in the earlier act (29 U. S. C. §160) was omitted in the later act (29 U. S. C. §160), and the Board was "empowered by agreement with any agency of any State . . .to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominately local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State . . .statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith."

In the Conference Report on the Taft-Hartley Bill, House Report 510, Eightieth Congress, at page 52, it was stated: "The Senate amendment, because of its provisions authorizing temporary injunctions enjoining alleged unfair labor practices and because of its provisions making unions suable, omitted the language giving the Board exclusive jurisdiction of unfair labor practices, but retained that which provides that the Board's power shall not be affected by other means of adjustment or prevention. The conference agreement adopts the provisions of the Senate amendment. By retaining the language which provides the Board's powers under section 10 shall not be affected by other means of adjustment, the conference agreement makes

clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies." It is thus apparent that the reason the word "exclusive" was not retained in the later act was that the courts were therein given jurisdiction of certain matters which they did not have under the earlier act. In the Bethlehem Steel Company case, supra, and Pittsburgh Railways Company Employees' Case, supra, the matter of the determination of a unit appropriate for the purposes of collective bargaining, not the prevention of unfair labor practices, was under consideration, and no reference was made in the opinions to the use of the word "exclusive" in section 10(a), which dealt with such practices, but the decisions were based upon the fundamental ground that "Congress, having exercised its power, did not intend to permit state action with regard thereto": Pittsburgh Railways Company Employees' Case, supra, 385.

Likewise, the authority given to the National Labor Relations Board to "cede" jurisdiction to a State agency is with respect to cases involving unfair labor practices, the prevention of which is the subject of section 10 of both acts, and does not pertain to proceedings involving the determination of a unit appropriate for the purposes of collective bargaining, the subject of section 9 of both acts (29 U. S. C. §159, and 29 U. S. C. §159). But even if it be held that the National Board has power to "cede" jurisdiction in cases involving the determination of a collective bargaining unit by virtue of section 10 of the later act, it can only be by agreement with a State agency. Such an agreement has not been entered between the National Board and the Pennsylvania Labor Relations Board in the instant case, and none appears to be likely, because the Pennsylvania Board has determined that a city-wide unit of the agents of Kentucky Central Life and Accident Insurance Company is appropriate for the purposes

of collective bargaining, and it is the policy of the National Board to designate as an appropriate unit of agents of an interstate insurance company for such purposes one no smaller than State-wide: Matter of Metropolitan Life Insurance Company, 56 N. L. R. B. 1635, 1640; Matter of Peoples Life Insurance Company, 72 N. L. R. B. 1406, 1408. Besides, the power of the National Board to "cede" jurisdiction to the Pennsylvania Board does not give the latter concurrent jurisdiction with the former. The jurisdiction of the two Boards is not joint and equal, but that of the latter depends upon the former's yielding or transferring some of its jurisdiction under certain terms and conditions prescribed in the act. As the Conference Report, supra, pointed out, at page 52, the National Board "may cede jurisdiction only if the applicable provisions of the State . . . statute and the rules of decision thereunder are consistent with the corresponding provisions of the National Act, as interpreted and applied by the Board and by the Courts". Hence, unless or until the National board chooses to exercise its authority by agreement with the Pennsylvania board to "cede" to the latter jurisdiction over cases, the latter does not have jurisdiction. But, as pointed out above, the authority of the National Board to "cede" jurisdiction is limited to cases involving unfair labor practices and does not include proceedings for the determination of a unit appropriate for the purposes of collective bargaining.

As the Pennsylvania Labor Relations Board does not have concurrent jurisdiction with the National Labor Relations Board under the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, to determine a unit appropriate for the purposes of collective bargaining in situations involving interstate commerce, it exceeded its powers in entertaining the original petition in this case, and determining and certifying the collective bargaining

560

unit for the agents of Kentucky Central Life and Accident Insurance Company in its Philadelphia district office.

The final order of certification of the Pennsylvania Labor Relations Board is vacated and set aside for want of jurisdiction.