General Building Contractors' Association *v.*
Local Union No. 542, Appellant.

Argued November 13, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

74

*Abraham E. Freedman,* with him *Freedman, Landy & Lorry,* for appellants.

*Henry W. Maxmin,* with him *Myron Jacoby, Jacoby & Maxmin, Manus McHugh* and *A. Bernard Hirsch,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 24, 1952:

General Building Contractors' Association, Pennsylvania Excavators' Association and Contractors' Association of Philadelphia, appellees, filed their bill in equity to restrain Local Unions, Nos. 542, 542A and 542B, International Union of Operating Engineers, and Roy J. Underwood, individually, and as president and business manager, appellants, from acting in disregard of an existing collective bargaining agreement between the parties. After a preliminary hearing before two judges, a preliminary injunction was issued granting the relief prayed for.

Plaintiff, General Building Contractors' Association, is a nonprofit organization having as members a large number of contractors engaged in construction of industrial, commercial, institutional and other buildings, with an affiliate group of a number of steel erectors. Plaintiff, Pennsylvania Excavators' Association,

an unincorporated association, has approximately fourteen members doing large excavating work. Plaintiff, Contractors' Association of Philadelphia, a nonprofit corporation, consists of about fifty-five contractors engaged in construction of bridges, roads, highways, subways and heavy sewer lines. The three associations act as negotiating agents for their constituents in consummating collective bargaining agreements with employes. Defendants are Local Unions No. 542, 542A and 542B, International Union of Operating Engineers, an unincorporated association, and Roy J. Underwood, its president and business manager.

Plaintiffs and defendants on October 7, 1949, entered into a retroactive written collective bargaining agreement for a term of one year to expire April 30, 1950. The agreement was signed by Roy J. Underwood for defendants, by William F. Lotz, president of General Building Contractors' Association, by John Buckley, president of Pennsylvania Excavators' Association, and by Harry R. Halloran, chairman of the board of directors of Contractors' Association of Philadelphia.

The Union in February, 1950 notified the respective plaintiffs of the termination of the agreement. By letter of February 15, 1950, Underwood wrote, "We shall be pleased to discuss with you at your convenience the terms and conditions of a new agreement to become effective May 1, 1950." Plaintiffs advised Robert G. Kelly, Esquire, attorney for the Union, that any wage increases would be resisted.

Harry R. Halloran and Robert G. Kelly, representing plaintiffs and defendants respectively, had negotiated and prepared the collective bargaining agreement of October 7, 1949 covering the year May 1, 1949 to April 30, 1950. These individuals acted because group or committee meetings had become too acrimonious to

achieve results. The same individuals for the same reason carried on negotiations for their respective principals for an agreement to become effective May 1, 1950. Kelly suggested that a welfare fund might be established. Halloran advised Kelly that no increase in wage could be granted but that it might be possible to work out an arrangement for a working welfare fund.

Underwood was authorized by the Union to negotiate for a welfare fund subordinating other issues such as wage rates and working conditions. Halloran, at the suggestion of Kelly, secured authority from the plaintiff associations to negotiate such collective bargaining agreement and was advised by Kelly that the latter had secured similar authority from the defendants. All negotiations and communications between the parties during the months of March and April, 1950 were restricted to Kelly and Halloran. The two negotiators agreed that in consideration of creation of a welfare fund, the existing collective bargaining agreement would be extended for a period of two years. The employers were required to contribute to such fund 10¢ per each man hour worked. This agreement was verbally made on April 14, 1950, by Kelly and Halloran, to become effective as of May 1, 1950.

Thereafter Halloran and Kelly engaged in drafting the terms of the trust necessary for establishing the welfare fund which culminated in the execution on August 17, 1950 (effective as of May 1, 1950) of a comprehensive trust agreement. Meanwhile a strike threatened for May 1, 1950 did not materialize. Prior to the execution of this instrument, at the request of Halloran, Kelly reduced to writing the oral agreement reached by them on April 14, 1950 as agents for their respective principals. This was captioned "Addendum Dated April 14, 1950, to Agreement and Working Rules Dated October 7, 1949, by and between Local Union 542,

542A and 542B, International Union of Operating Engineers, A. F. L. and General Building Contractors Association, Pennsylvania Excavators Association and Contractors Association of Philadelphia", and in accord with the oral agreement made the effective date May 1, 1950, provided for the creation of the welfare fund and continued all of the terms and conditions of the collective bargaining agreement of October 7, 1949 until April 30, 1952. It was signed by Halloran and Kelly as the "duly authorized" representatives of the plaintiff associations and the defendant Unions. Prior to the execution of the trust agreement, the six trustees provided for therein, three of whom were representatives of the associations and three representatives of the Unions, including Underwood, unanimously passed a resolution adopting the welfare fund ". . . in accordance with the terms of a Collective Bargaining Agreement negotiated by the parties thereto under date of April 14, 1950."

Kelly, on August 25, 1950, forwarded the addendum to Underwood, stating that he had executed it on behalf of the Union. Underwood, on October 11, 1950, attempted to repudiate Kelly's authority and the terms of the agreement. Halloran, to whom the letter of repudiation was addressed, immediately notified Kelly that the employers insisted that the agreement of the parties be honored.

The welfare fund began operation with Kelly, as paid administrator, assuming extensive responsibilities for the conduct of its affairs. The Fidelity-Philadelphia Trust Company, as fiscal agent, opened its trust account on December 7, 1950. Subsequent to the execution of the trust agreement, the trustees held meetings on October 19 and 27, 1950, and March 26, 1951. More than a quarter of a million dollars has been paid into the welfare fund.

The Unions, on February 21, 1951, sent to plaintiffs letters giving notice of termination of the collective bargaining agreement, and on April 5, 1951 sent letters to the plaintiffs advising that work by employe members of the Union would stop May 1, 1951. Plaintiffs, on April 27, 1951, filed their bill in equity averring the collective bargaining agreement, a threat of a strike in violation of the provisions thereof, irreparable loss and damage which would be suffered as a result of the breach, and inadequacy of a remedy at law.

The appellant Unions contend that (1) the holding of the court below that Kelly had authority to bind the Union to the two year addendum was not supported by the evidence; (2) the finding that execution of the trust agreement was conditioned upon the addendum was not supported by the evidence; (3) Congress, by enactment of the Labor Management Relations Act, 1947, 61 Stat. 136, 29 USCA, §141 et seq., deprived the court below of jurisdiction to determine the matter and to issue an injunction, and (4) if the court below did have jurisdiction of the subject matter, it must, nevertheless, apply the law as it would be applied in the federal court and thus was prevented from issuing an injunction.

Plaintiffs contend that (1) the finding of the court below that there existed a valid collective bargaining agreement with a term of two years was amply supported by the evidence, and (2) neither the Labor Management Relations Act nor any other federal legislation deprived the state courts of inherent equity powers.

Examination of the record compels the conclusion that there is ample evidence to sustain the holding of the court below that the addendum of April 14, 1950 was mutually agreed upon; that Halloran and Kelly acted on behalf of their principals within the scope

of their agency; that Kelly "was properly authorized to negotiate and sign" the addendum agreement; and that it was "a binding agreement and as such should be enforced by the courts." These findings of the court below, supported as they are by substantial evidence having rational and probative force, will not be disturbed.

Appellants' fundamental challenge, viz., jurisdiction of a state court to issue a restraining order enjoining violation of a collective bargaining agreement was not presented in the court below. Because of the challenge to the judicial power we will consider it on this appeal. The attack is based on an asserted supremacy of federal statutes relating to labor relations, it being claimed that the business of the employers affects interstate commerce. We will assume in the disposition of this case that interstate commerce is affected.

The subject matter of the instant action is a collective bargaining agreement and the power of the court invoked is the power to require adherence to such agreement, to prevent a breach thereof and to prevent irreparable damage to a party to that contract. There is not involved any action for damages arising from breach of a collective bargaining agreement within the intendment of Section 301 of the Labor Management Relations Act (29 USCA §185). Decisions of courts involving actions for damages arising from a violation of a collective bargaining agreement are, therefore, inapposite. This disposes of defendants' reliance upon the cases of *Shirley-Herman Co., Inc., v. International Hod Carriers, Building & Common Laborers Union of America, Local Union No. 210*, 182 F. 2d 806, and *Schatte et al. v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of United States and Canada et al.*, 182 F. 2d 158.

No more is involved here than an action in equity to preserve the existence of a valid and subsisting contract and to compel parties thereto to recognize, adhere to and perform duties and obligations, contained therein. Evidence of irreparable damage threatened and imminent, together with the recognition of the contract by the Union and acceptance of the benefits of the contract, justifies intervention of a court of equity to preserve contractual rights and to enforce performance of the solemn duties assumed.

Nor is the Norris-LaGuardia Act (29 USCA §101) of any benefit to appellants. That statute uses the words "court of the United States". By its very terms the Act only applies to suits for injunctions in the United States courts and is not intended to limit the jurisdiction of the state courts: *United Electrical, Radio & Machine Workers of America (CIO) et al. v. Westinghouse Electric Corporation*, 65 F. Supp. 420 at 422; see *Milk Wagon Drivers' Union, Local No. 753 et al. v. Lake Valley Farm Products, Inc., et al.*, 311 U. S. 91 at 101, 61 S. Ct. 122.

Defendants state in their brief: "The Federal legislation which is applicable in this case neither confers concurrent jurisdiction upon the State Courts, nor does it expressly exclude the State Courts from exercising such jurisdiction. The legislation must, therefore, be examined as a whole to determine the intention of the Congress." Unquestionably if Congress has legislated upon the matter specifically or in a manner to clearly exclude the jurisdiction of a state court, its mandate must control: *Pittsburgh Railways Company Substation Operators and Maintenance Employees' Case*, 357 Pa. 379, 54 A. 2d 891.

Federal legislation claimed to be applicable does not concern itself with the exercise of equitable jurisdiction here exerted. Nowhere is there provision for as-

suring compliance with the contract and performance of the duties and obligations imposed thereby upon the respective parties to the contract. Defendants' contention that Congressional provision for the prohibition of injunctions *in United States courts* and provision for *recovery of damages by reason of a breach of contract* constituted a preemption of all phases of law in so far as recognition and enforcement of collective bargaining agreements are concerned, cannot be accepted. We can agree that federal labor legislation must be regarded as a single integrated program. It does not follow, however, that assertion of power over labor disputes and employe-employer relations deprived state courts of equity from exercising their traditional power to require performance of solemn contractual duties and, by injunctive relief, to prevent irreparable damage which would be brought about by failure to perform such duties. This Court in *Wortex Mills, Inc., v. Textile Workers Union of America, C.I.O. et al.,* 369 Pa. 359, 85 A. 2d 851, (opinion by Mr. Justice Bell, January 7, 1952), recognizes that even where employe-management relations are involved, there are many situations in which the power of the state remains intact. See *Hughes et al. v. Superior Court of California for Contra Costa County,* 339 U. S. 460, 70 S. Ct. 718. In *International Union U. A. W. A., A. F. of L., Local 232, et al. v. Wisconsin Employment Relations Board et al.,* 336 U. S. 245, 69 S. Ct. 516, Mr. Justice Jackson, speaking for the Court, in referring to the Labor Management Relations Act and the National Labor Relations Act, said at p. 252: "Congress has not seen fit in either of these Acts to declare either a general policy or to state specific rules as to their effects on state regulation of various phases of labor relations over which the several states traditionally have exercised control."

There does not exist any repugnance or conflict, direct or indirect, between the exercise of jurisdiction by a court of equity as in the instant case and the Labor Management Relations Act and the Norris-La-Guardia Act. There are no statutes which would curtail the exercise of jurisdiction by the Court in the circumstances here presented. Prevention of violation of obligations contained in a contract by injunctive relief is a power traditionally exercised by courts of this Commonwealth. Congress has not acted upon the specific subject matter at issue. Enforcement of contracts may be required according to the usual processes of the law.

Decree affirmed, at cost of appellants.