## Philadelphia Transportation Company v. Transport Workers Union of Philadelphia, Local 234, et al.

*Hamilton C. Conner, Jr.,* for plaintiff.

*M. H. Goldstein,* for defendants.

KUN, P. J., December 16, 1952. — This court, on December 12, 1952, after a hearing held on the same

day, issued a preliminary injunction enjoining defendant unions, their officers, agents and members, from calling or conducting a strike or work stoppage during the 30-day period following December 14, 1952, in violation of their agreement with plaintiff not to do so. This memorandum is written to set forth the reasons for the court's action.

At the hearing plaintiff offered testimony in support of its verified complaint. No evidence was introduced by defendants. Thus, the uncontradicted facts before this court are as follows:

The Transport Workers Union of Philadelphia, Local 234, is the certified exclusive collective bargaining representative of the Philadelphia Transportation Company's transportation and maintenance employes, totaling approximately 9,500, and is recognized and dealt with as such by plaintiff. Local 234, which is a defendant, is affiliated with Transport Workers Union of America, also a defendant (hereinafter called International).

A comprehensive labor agreement had been entered into between the company and the unions under date of September 12, 1950, which by its terms expired on February 10, 1951.

In December of 1950 plaintiff and defendants were engaged in negotiating a new agreement to be effective upon the termination of the agreement of September 12, 1950. On December 21, 1951, representatives of the unions and plaintiff reached an oral agreement extending the term of the agreement dated September 12, 1950, until December 14, 1952, providing for increased wage rates and also for a 30-day cooling-off period following the expiration date of the labor agreement as extended.

Thereafter, on January 4, 1951, a proposed written agreement embodying the terms agreed to by the parties at the negotiating meeting of December 21,

1950, was executed by plaintiff and delivered to defendant Quill, the president of International. Defendant Quill signed the proposed written agreement but returned it to plaintiff with the cooling-off provision deleted therefrom. At that time defendant Quill stated to plaintiff that the cooling-off provision would be covered by a separate letter, and also requested that plaintiff give defendant unions a letter to the effect that plaintiff would not require regular trainmen to pick less than six days' work per week and would not establish regular work schedules for maintenance employes of less than five days. After several exchanges of letters and after plaintiff had advised defendant Quill by letter and in person that it would not accept the agreement reached on December 21, 1951, unless a satisfactory letter providing for a 30-day cooling-off period was received, defendant Quill delivered to plaintiff a letter dated January 19, 1951, which read as follows:

"I have been authorized by the Executive Board of Local 234, TWU-CIO, to state to you that in the event a collective bargaining agreement between the Transport Workers Union of America, CIO, and the Philadelphia Transportation Company is not reached by midnight, December 14, 1952, the Union will observe a cooling-off period for the ensuing thirty days before any strike shall take place."

Upon receipt of this letter from defendant Quill, plaintiff executed and delivered a new written agreement dated December 21, 1950, and also delivered to defendant unions a letter concerning the work week. Thereafter plaintiff commenced the payment of the increased wages provided for in the written agreement dated December 21, 1950.

On October 3, 1952, plaintiff was notified by defendants of their election to terminate on December 14, 1952, the labor agreement dated September 12, 1950,

as amended and supplemented. Since that date plaintiff and representatives of the defendants have held a series of meetings for the purpose of negotiating a new agreement. During these meetings and in the public press defendants O'Rourke and Quill stated on several occasions that they and the members of defendant Local 234 would not observe the cooling-off period provided for in the letter dated January 19, 1951.

It appeared certain that no new agreement could be reached by the parties prior to December 14, 1952, and that in violation of the labor agreement, as amended and supplemented, defendant International and defendant Local 234 would cause and prosecute a strike or work stoppage commencing at midnight Sunday, December 14, 1952.

Such a strike or work stoppage would have been in direct violation of the cooling-off provision, which is part of the labor agreement, as amended and supplemented. It would also have caused immediate and irreparable injury to plaintiff and to the public and would have interrupted the essential transportation service which plaintiff renders the public.

The Quill letter of January 19, 1951, embodied one of the terms which had been agreed to by the parties at the negotiating meeting of December 21, 1950. The cooling-off provision had been deleted from the proposed written agreement with the understanding that it would be covered by a separate letter. Plaintiff refused to execute the proposed written agreement or to comply with the terms thereof until this letter was received from defendant Quill. This letter supplements the written agreement providing for a cooling-off period following the expiration of the written agreement; it was executed as part of the same transaction and is thus an integral and essential part of the labor agreement between the parties: Rekas v. Dopkavich, 362 Pa. 292 (1949). That the several

papers in the case cited were executed on the same day was not the controlling point. The controlling point was that they were executed in the same transaction, and thus became the contract between the parties. When defendant Quill, acting for the union, returned the proposed contract dated January 4, 1951, which had been signed by plaintiff, with his signature thereon but with the 30-day cooling-off no-strike provision deleted therefrom, there was no contract between the parties. As stated in Williston on Contracts, vol. I, p. 146:

"An answer purporting to accept upon condition, is not an acceptance but is in effect a counter-offer, because it states in substance that the offeree will contract on the terms of the original offer if some addition or subtraction is made from them, but implies that otherwise he will not contract."

A. L. I. Restatement of Contracts §38, provides: "A counter-offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer. . . . " This is in accordance with the established law on the subject before the restatement, as pointed out in National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822, where the principle is succinctly stated as "Acceptance upon terms varying from those offered, is a rejection of the offer". To the same effect see Serv. Prod., Inc., v. Amer. Insul. Co., 104 Pa. Superior Ct. 469, 473; Vitro Manufacturing Co. v. Standard Chemical Co., 291 Pa. 85. There was no contract between the parties here until Quill for the union wrote his letter to plaintiff of January 15, 1951, above quoted, and on its acceptance by plaintiff, it became part of the contract between the parties.

This court has general equity power to enjoin a strike or work stoppage in violation of a labor agreement: Act of June 16, 1836, P. L. 784, secs. 13, 17 PS §282. The Anti-Injunction Act of June 2, 1937, P. L. 1198,

is not a bar to such an injunction because section 4(*a*) thereof, as amended by section 1 of the Act of June 9, 1939, P. L. 302, 43 PS §206*d*(*a*), expressly exempts from the 1937 Act a labor dispute "which is in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement."

The Act of June 9, 1939, supra, completely restores to the courts of common pleas the equitable powers exercised by them since the Act of June 16, 1836, supra; Carnegie-Illinois Steel Corp. v. United Steelworkers of America et al., 353 Pa. 420, 428 (1946); Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America, 353 Pa. 446, 456 (1946).

This court therefore had the power to enjoin the threatened strike or work stoppage which was a direct violation of the union agreement that there would be no strike during the 30-day period following December 14, 1952: General Building Contractors' Association v. Local Union No. 542, 370 Pa. 73 (1952); Philadelphia Transportation Company v. TWU, C. P. No. 7, Phila. Co., June term, 1952, no. 6223.