## Motor Transport Labor Relations, Inc., v. Team Drivers Local No. 470

C. *Brewster Rhoads*, for plaintiffs.

*Edward Davis*, for defendants.

MILNER, J., June 17, 1957.—Plaintiff, Motor Transport Labor Relations, Inc., is an incorporated association of motor freight operators formed and existing for the purpose of representing and acting on behalf of its members in all labor relations between each member of the association and such of the members' employes as are represented by the American Federation of Labor Teamster Unions and certain other unions. Plaintiff, Reader Bros., Inc., is a member of the association and its employes are members of Team Drivers Local No. 470 of the American Federation of Labor. Local 470 and certain of its officers are defendants. Plaintiffs brought this action in equity seeking injunctive and other relief because of an

alleged violation and breach of a subsisting contract between the parties, and filed a rule to show cause why a preliminary injunction should not issue to restrain defendants, pending the final disposition of the action, from violating the alleged subsisting labor agreement between plaintiffs as employers and representatives of defendants as employes for the purpose of collective bargaining, which agreement, inter alia, provided for arbitration of disputes and that there would be "no strikes, stoppages of work or slow-downs, for any reason during the term of this agreement." Plaintiffs allege defendants have stopped work at Reader Bros., Inc., and are engaging in a strike against Reader Bros., Inc., as a result of which plaintiff, Reader Bros., Inc., has been and is suffering immediate and irreparable damage. Hearings were held before the chancellor on the motion for a preliminary injunction on May 9, 10 and 14, 1957, and witnesses for both plaintiffs and defendants were heard. From a careful consideration of admissions in the pleadings and the testimony we considered credible, we make the following

### Findings of Fact

. . .

8. On October 9, 1950, after negotiating jointly with all of the teamster unions, plaintiff, MTLR, entered into a collective bargaining agreement for and on behalf of certain of its members with Local No. 470 by the terms of which plaintiff, MTLR, recognized said Local No. 470 as the sole bargaining agent for the chauffeurs, helpers and platform men employed by those members of MTLR, and specifically, Reader Bros. Said agreement is still in full force and effect, except as modified by a supplemental agreement dated as of January 1, 1953, and modifications on January 1, 1955, and January 1, 1957. The agreement of October 9, 1950, as modified by the supplemental agreement dated

as of January 1, 1953, and the modifications of January 1, 1955, and January 1, 1957, are hereinafter collectively referred to as the "aforesaid agreement".

9. Included in and forming part of the aforesaid agreement and designated as paragraph XV in the agreement dated October 9, 1950, is a clause which provides as follows:

"(a) All grievances or disputes arising under the terms of this agreement shall be handled in the manner provided by this Article. In the case of any such grievance or dispute, the UNION steward shall take the matter up with the OPERATOR'S representative, and every effort shall be made to reach a mutually satisfactory solution. If no solution can be reached, the UNION steward shall refer the matter to the Business Agent, and the Business Agent shall take the matter up with the OPERATOR in an endeavor to adjust it amicably.

"If the Business Agent of the UNION and the OPERATOR do not reach a satisfactory agreement, the matter shall be referred to a Joint Committee composed of representatives of UNION and of DIVISION. This Joint Committee shall make any investigation, schedule any meetings, or take any other steps it may consider appropriate under the circumstances of the particular case. If the representatives of the UNION (considered as a unit) and the representatives of the DIVISION (considerd as a Unit), on such Joint Committee, shall agree upon a solution of the grievance or dispute, their decision shall be final and binding upon all parties. If they shall disagree, the matter shall be submitted to the Chairman of the DIVISION and the Secretary-Treasurer of the UNION, and if they shall agree, their decision shall be final and binding upon all parties. If they shall disagree, the matter shall be submitted to the respective attorneys for the UNION and for the DIVISION, whose decision,

if they shall agree, shall be final and binding upon all parties.

"If the foregoing procedure shall fail to result in any agreement upon the adjustment of the grievance or dispute, the matter shall be submitted to a disinterested arbitrator selected by lot from a panel of arbitrators consisting of the following: Judge Herbert F. Goodrich of the Circuit Court of Appeals of the United States for the Third Circuit, and Dr. James T. Young, Dr. Charles C. Rohlfing and Dr. Edward W. Carter, all of the Wharton School of the University of Pennsylvania. Eliminations from or additions to the panel may be made by mutual consent of the UNION and DIVISION at any time. The fee of the arbitrator shall be borne equally by the OPERATOR and the UNION.

"The decision of the disinterested arbitrator shall be rendered within two (2) weeks of the time that all hearings have been completed and the matter has been finally submitted to him for determination.

"(b) *Except for the failure of an Operator to abide by an arbitration award after forty-eight (48) hours' notice to DIVISION (MTLR), UNION agrees that there shall be no strikes, stoppages of work, or slowdowns, for any reason whatever during the term of this agreement, and DIVISION* agrees that there shall be no lockouts for any reason whatever during the term of this agreement." (Italics supplied)

10. Article XV of the agreement of October 9, 1950, was not changed by any of the subsequent modifications and remains in full force and effect . . .

12. The aforesaid agreement and all subsequent modifications were voted upon and accepted by the membership of Local No. 470 . . .

14. The aforesaid agreement was embodied in paragraph 23 of the memorandum of agreement dated as of January 1, 1957, in which specific reference to Coastal Tank Lines, Inc., was omitted at the request of the

attorney for defendant Local No. 470 after the actual agreement had been reached, but with the specific understanding that such omission would have no effect on the actual agreement that whatever wages, hours and working conditions were negotiated between Local 107 and Coastal Tank Lines, Inc., would automatically apply to Reader Bros.' employes. Said paragraph 23 of the memorandum of agreement reads as follows:

"*Reader Brothers*

"*Agreed*—that as in other cases, our members shall pay no more nor have worse conditions than their competitors having contracts with any of the Unions involved in this negotiation. A separate negotiation is to be held with all Operators and all local Unions involved, so that same rates and conditions will apply to all Operators in this industry." . . .

### Discussion

Motor Transport Labor Relations, Inc., (MTLR) is a nonprofit corporation comprising in its membership motor freight operators including plaintiff, Reader Bros., Inc. On October 9, 1950, as collective bargaining agent for its members, it entered into an agreement with various teamster unions, Locals 107, 312, 331, 384, 470, 676 and 929, after a joint negotiation. This agreement was subsequently modified as of January 1, 1953, January 1, 1955, and January 1, 1957. It is the negotiation of the amendment of January 1, 1957, which is involved in this proceeding.

Some time in 1955, it was discovered by MTLR that despite a provision in its agreement with the teamster locals prohibiting it, Local 107 had negotiated wage rates, hours and working conditions with Coastal Tank Lines, Inc., a nonmember of MTLR, that were more favorable to Coastal than the wage rates, hours and working conditions in effect at Reader Bros., Inc., a member of MTLR, a competitor.

514

During the negotiations leading up to the amendments effective as of January 1, 1957, Raymond Cohen, Secretary-Treasurer of Local 107, was designated by all the unions to act for them. Thomas D. McBride, the present Attorney General of the Commonwealth of Pennsylvania, was the attorney for the union negotiator during the negotiations. Bernard G. Segal, Esq., and his partner, James J. Leyden, Esq., were attorneys for the MTLR negotiators. Other witnesses who were heard were John H. Matthews, secretary of MTLR, Hugh Gannon, vice-president of MTLR, Ralph Tatro, manager of Reader Bros., Inc., Frank Mason, steward at Reader Bros., Inc., of Local 470, Thomas McDonnell, secretary-treasurer of Local 470, and Peter Schultz, president of Local 470.

One of the first items agreed to by all negotiators was that whatever wages, hours and working conditions were negotiated between Local 107 and Coastal Tank Lines, Inc., would automatically apply to Reader Bros., Inc., employes.

After a 13-week strike by Local 107 at Coastal Tank Lines, Inc., an agreement was reached with that operator. The union, Local 470, was notified that as of April 1, 1957, the Coastal wages, hours and working conditions would be applied to Reader Bros., Inc., employees. On April 1, 1957, the Reader Bros., Inc., employes refused to work. Local 470 and its officers named as defendants herein sanctioned the strike and work-stoppage of the employes of Reader Bros., Inc., after April 1, 1957, and up to the time of the hearing in this matter, by paying each of said employes who were not working and whom they refused to order back to work the sum of $35 a week. In the opinion of the chancellor this payment was a strike benefit and thus the strike and work-stoppage were the acts of the Local No. 470 and its said officers.

The agreement between the parties, which was ratified by the members of Local 470, contains a grievance, arbitration and no-strike clause. The court after hearings issued a preliminary injunction restraining the union and the employes from violating the collective bargaining agreement.

The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 4, as amended by the Act of June 9, 1939, P. L. 302, provides that it should not apply in any case involving a labor dispute which was in disregard, breach or violation of, or which tended to procure the disregard, breach or violation of, a valid subsisting labor agreement, arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining.

After hearing the testimony of the negotiators and attorneys for both parties, all of whom are well known, respected and honorable people, the chancellor is of the opinion that the dispute and the strike and work-stoppage in the instant case are clearly in disregard, breach or violation of a valid subsisting labor agreement, arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining.

The persons called as witnesses who took part in the drawing of the agreement between the parties were in agreement as to its terms, and particularly that paragraph 23 of the memorandum of agreement dated January 1, 1957, was as set forth in the foregoing finding of fact no. 14 and was made a term or provision of the contract. The purpose of this paragraph 23 was to place Reader Bros., Inc., in position to compete with other truckers carrying liquid freight and prevent it from being put at a disadvantage because it had to pay a higher rate of wage, etc., than its main competitor, which was the Coastal Tank Lines, Inc. The union

employes were engaged in a long strike at Coastal Tank Lines, Inc., and when the strike was finally settled on March 13, 1957, the agreement provided for rates of wages which, while they represented an increase over the old rates which Reader Bros., Inc., employes had been paid, were not as favorable to those employes with regard to their opportunity to receive one and one-half the normal rate under the provisions in regard to overtime.

From the evidence before us there can be no doubt that the effect of the settlement of the strike upon the ability of Reader Bros., Inc., employes to earn larger overtime pay was a moving reason for their not wanting to abide by the provisions of the aforesaid paragraph 23, and for advancing as their reason the allegation in this proceeding that they had not approved that section. But there was credible testimony to the contrary, and it can be noted that Local 470 has about 4,000 members and those of Local 470 who work for Reader Bros., about 27 in number, are the only ones who have challenged any part of the negotiated agreements. The chancellor is therefore of the opinion that the weight of the credible evidence before him did not bear out defendants' contention.

Accordingly, the Labor Anti-Injunction Act does not apply (Act of June 2, 1937, P. L. 1198, sec. 4, as amended June 9, 1939, P. L. 302, 43 PS §206d, supra), nor have the Federal acts deprived this court of jurisdiction: Philadelphia Marine Trade Association v. International Longshoremen's Association, Local Union No. 1291, 382 Pa. 326 (1955), cert. denied, 350 U. S. 843 (1955) ; General Building Contractors' Association v. Local Union No. 542, 370 Pa. 73 (1952), cited with approval in Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19 (1952).

Prevention of violation of obligations contained in a contract by injunctive relief is a power traditionally exercised by courts of this Commonwealth: General Building Contractors' Association v. Local Union No. 542, supra.

## Conclusions of Law

1. There is no labor dispute between the parties.

2. Plaintiffs have not committed any unfair labor practice as defined in the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.6, and the National Labor Relations Act of July 5, 1935, 49 Stat. 449, as amended, 29 U. S. C. §§151-166.

3. Plaintiffs have not violated any of the terms and conditions of the subsisting valid labor agreement between the parties.

4. Defendants' actions are in disregard of and a breach of the valid subsisting labor agreement between the parties.

5. Defendants' conduct has caused plaintiffs to suffer substantial and irreparable injury.

6. Section 4(a) of the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, as amended, 43 PS §206d(a), renders the provisions of that act inapplicable in this case.

For the reasons set forth above this court issued on May 15, 1957, a preliminary injunction as follows:

"AND NOW, this 15th day of May, 1957, upon consideration of the Complaint in Equity, and after hearing in the above-captioned case, and it appearing to the Court that immediate and irreparable damage and injury has resulted to the Plaintiffs, and it appearing further that the dispute between the parties relates to the disregard, breach or violation of a valid subsisting labor agreement arrived at between the plaintiffs as employers and the representatives designated

or selected by the defendants as employes for the purpose of collective bargaining, it is

"ORDERED AND DECREED

"1. That an injunction be issued enjoining and restraining the defendants jointly, severally, and as representatives of the aforesaid labor union, their servants, agents, members, employes and all other persons acting on behalf of them or any of them,

"(a) From refusing to order forthwith the employes of the plaintiff, Reader Bros., Inc., who are members of Team Drivers Local No. 470 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America to return to work, or from refusing to supply satisfactory replacements;

"(b) From refusing to return to work;

"(c) From refusing to arbitrate the dispute between the parties in accordance with Article XV(a) of the agreement between MTLR and Local No. 470;

"(d) From preventing, or attempting to prevent, by any means, plaintiff Reader Bros., Inc., from doing business with independent contractors or owner-operators in the event members of said Local No. 470 who are or were employes of Reader Bros., Inc., refuse to return to work and Local No. 470 does not supply satisfactory replacements;

"(e) From preventing, or attempting to prevent, any person or persons from entering or leaving plaintiff's, Reader Bros., Inc.'s, terminal, located at Water and Tasker Streets, Philadelphia, Pennsylvania, or terminals of plaintiff's, Reader Bros., Inc.'s, customers;

"(f) From congregating, loitering or gathering in front of, near to, or about said premises of plaintiff, Reader Bros., Inc., or the entrances thereto aforesaid at any time;

"(g) From taking any action, or pursuing any course of conduct, which is intended to or has the

effect of violating, interfering with, or disturbing the present contractual relationship between the plaintiffs and Local No. 470.

"2. Security to be entered in the amount of One Thousand Dollars and the bond of Massachusetts Bonding and Insurance Company is approved as surety."