Pittsburgh Railways Company Substation Operators and Maintenance Employees' Case.

Argued March 24, 1947; reargued June 30, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ

*Jason Richardson,* for labor union, appellant in No. 33.

*William Anderson, Jr.,* for railways company trustees, appellant in No. 34.

*George L. Reed,* with him *Herman Lipsitz, M. Louise Rutherford,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY MR. JUSTICE PATTERSON, September 29, 1947:

These appeals challenge the propriety of the Pennsylvania Labor Relations Board's interpretation and application of Section 7 of the Act of 1937, P. L. 1168, as amended by the Act of 1945, P. L. 1379, 43 P.S. Section 211.7, and its jurisdiction to entertain a petition to determine the appropriate unit for the purpose of collective bargaining.

The International Union of Operating Engineers, Local No. 95, a labor organization, on July 11, 1944, filed a petition with the Pennsylvania Labor Relations Board asserting that a question concerning representation of employees had arisen in a suggested unit comprising substation operators and maintenance mechanics of the Pittsburgh Railways Company; that the

Company refused to bargain with Local No. 95 unless certified as the bargaining representative; and, prayed for an investigation of the controversy and certification of the representative designated or selected by a majority of the employees in a unit appropriate for such purposes.

The Board subsequently determined that a craft unit was appropriate for collective bargaining, that the employees involved were craftsmen, and certified Local No. 95 as the collective bargaining agent. Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 85, appellant in appeal No. 33, had been sole bargaining agent of all operating employees of Pittsburgh Railways Company, including the substation operators and maintenance mechanics involved in the present dispute, for a period of 44 years, although, since 1937, only a few of the substation operators and maintenance mechanics have been members of Division 85. Exceptions filed by Division 85 and W. D. George and Thomas Fitzgerald, trustees for Pittsburgh Railways Company, appellant in appeal No. 34, were dismissed by the Board. Appeals were then taken to the Court of Common Pleas of Allegheny County which remanded the case to the Board for further findings, not material here. After further findings by the Board, oral argument was had before the court en banc which concluded that there was substantial and credible evidence to support the finding of the Board that substation operators and maintenance mechanics are craftsmen, that Local No. 95 is a craft union, and affirmed the order of the Pennsylvania Labor Relations Board. These appeals followed. Because of the possible effect of the decision of the Supreme Court of the United States in *Bethlehem Steel Company v. New York State Labor Relations Board* and *Allegheny Ludlum Steel Corporation v. Kelley*, 330 U. S. 767, 67 Sup. Ct. 1026, upon the question of jurisdiction in the present case, reargument was ordered.

Pittsburgh Railways is admittedly engaged in interstate commerce within the meaning of the National Labor Relations Act: Act of July 5, 1935, 49 Stat. 449, 29 U.S.C.A. Section 151 et seq. 29 U.S.C.A. Section 159, et seq. Its operations have a substantial effect upon interstate commerce. Employer-employee relations with regard to the selection and determination of an appropriate bargaining unit, certification of a representative for purposes of collective bargaining and prevention of unfair labor practices are within the jurisdiction of the National Board.

Appellants contend that the Pennsylvania Labor Relations Board could not constitutionally entertain the petition for investigation and certification for the reason that Congress, by enactment of the National Labor Relations Act, had foreclosed state action. The Pennsylvania Labor Relations Board, appellee, contends that although an industry is engaged in interstate commerce within the meaning of the National Labor Relations Act, jurisdiction to determine appropriate bargaining units and certify collective bargaining representatives does not vest exclusively in the National Labor Relations Board but is concurrent, and that the exercise of state power can be suspended only when the issue presented has been before the National Board or where the state board enforces a policy at variance with or repugnant to that of the National Labor Relations Board. This latter contention cannot be sustained.

The power of a state to regulate a given subject may be suspended if Congress deems it necessary and advisable, and by a proper exercise of a delegated power does enact legislation with regard thereto. Prior to enactment of the National Labor Relations Act, power of the states to regulate all phases of employer-employee relations, as regards collective bargaining, was unrestrained by Congressional action, notwithstanding that the industries affected were engaged wholly in interstate

commerce or in the manufacture or production of goods destined to be shipped in interstate commerce. Congressional power to regulate interstate commerce did not in any manner impair administration of state laws; nor had Congressional silence been construed as restricting exercise of state power. When Congress, for the purpose of eliminating burdens upon the free flow of commerce between the states, struck at abuses prevalent among industries engaged in the production of goods for interstate commerce and enacted the National Labor Relations Act, it secured to all employees encompassed within the orbit of its power the right of collective bargaining through representatives of their own choosing and restrained employers from committing certain designated unfair labor practices.

The National Labor Relations Board was created as the administrative agency by and through which the respective benefits and sanctions were to be secured and imposed. Jurisdiction of this Board extended not merely to those industries directly engaged in interstate commerce or in production or manufacture of goods destined to use interstate channels for distribution, but also to those which, admittedly local and intrastate, had a close and substantial relation to interstate commerce and whose regulation was necessary to maintain conditions under which interstate commerce may be conducted without molestation or hindrance: *National Labor Relations Board v. Fainblatt,* 306 U.S. 601, 59 Sup. Ct. 668.

Jurisdiction in a stated circumstance must be determined from facts presented. Whether Congressional action was intended to extend to such relations cannot be known in advance of an appraisal of facts determined by the National Labor Relations Board. ". . . in determining that factual question regard should be had to all the existing circumstances including the bearing and effect of any protective action to the same end already taken under state authority. The justification for the

exercise of federal power should clearly appear . . . *But the question in such a case would relate not to the existence of the federal power but to the propriety of its exercise on a given state of facts": Consolidated Edison Company of New York, Inc., et al. v. National Labor Relations Board, et al.,* 305 U.S. 197, 59 Sup. Ct. 206, 214. (Italics supplied.) It is clear, therefore, that when the National Board finds from substantial evidence that the employer-employee dispute does not substantially affect interstate or foreign commerce, state power may properly be exercised and is unaffectd by the National Labor Relations Act.

It is admitted that interstate and foreign commerce would be directly or at least substantially affected by disruption or cessation of operation by Pittsburgh Railways Company. The applicability of the National Labor Relations Act to the dispute is not denied. What is denied is that state power has been suspended because of the exercise of Congressional power to regulate and determine phases of employer-employee relations, i. e., the collective bargaining unit and collective bargaining agent.

Where Congress has not exercised its power with regard to a given employer-employee relationship, regulation thereof by the state is permissible. In *Allen-Bradley, et al. v. Wisconsin Employment Rel. Bd.,* 315 U.S. 740, 62 Sup. Ct. 820, it was held that a state could prevent mass picketing and picketing of employees' homes, although the employee involved was subject to the National Labor Relations Act. The Court said (p. 749): "Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board . . . Congress designedly left open an area for state control." That case is inapposite for here Congress has acted with regard to the subject matter of the controversy.

The subject matter of the instant dispute does not constitute or represent "a separable or distinct segment

of the matter covered by the federal statute". Nor can it be said that "the federal agency has not acted on that segment." See *Bethlehem Steel Company v. New York State Labor Relations Board,* supra, 67 Sup. Ct. at 1030. The issue,—determination of the collective bargaining unit and collective bargaining agent,—represents a basic and fundamental part of the Congressional regulation. Congress, having exercised its power, did not intend to permit state action with regard thereto. In *Bethlehem Steel Company v. New York State Labor Relations Board,* supra, Mr. Justice JACKSON said (67 Sup. Ct. at 1031) : "Comparison of the State and Federal statutes will show that both governments have laid hold of the same relationship for regulation, and it involves the same employers and the same employees . . . If the two boards attempt to exercise a concurrent jurisdiction to decide the appropriate unit of representation, action by one necessarily denies the discretion of the other." It becomes immaterial, therefore, that appellee might act in harmony and not inconsistent with the policy of the federal board. ". . . power to decide a matter can hardly be made dependent on the way it is decided": *Bethlehem Steel Company v. New York State Labor Relations Board,* supra, 67 Sup. Ct. at 1031.

Appellant further contends that it may act until the National Board has acted in the same case. The Supreme Court, dismissing an identical contention in the *Bethlehem Steel* case, supra (67 Sup. Ct. at 1031), said : ". . . we do not think that a case by case test of federal supremacy is permissible here." Determination of permissible exercise of state power in circumstances presented depends not upon possible inconsistent state action but upon the affirmative exercise of power by Congress. A state may not be permitted to exercise powers dependent upon consistency or inconsistency with federal policy. Congress has exercised its power over the identical relationship and properly vested jurisdiction for determination and regulation thereof in an adminis-

trative agency created by it for that purpose. In the *Bethlehem Steel* case, supra, the New York State Labor Relations Board designated foremen as a proper bargaining unit at a time when, by reason of the vacillation of the National Labor Relations Board upon that issue, such appropriate unit would not have been certified by it. By asserting jurisdiction to determine the collective bargaining unit, the state board was held to have exceeded its power and to have unconstitutionally encroached upon the power of the federal government. The clear implication of the decision of the Supreme Court of the United States in *Bethlehem Steel Co. et al. v. New York State Labor Relations Board*, supra, is that wherever the employer-employee relationship is one over which Congress has the power of regulation and with regard to which Congress has acted, state power is suspended and cannot constitutionally be exercised. To permit the exercise of state power in such circumstances would effectively negative the supremacy of Congressional legislation.

The criterion to determine validity of the exercise of state power is not whether the agency administering federal law has acted upon the relationship in a given case; rather, it is whether Congress has asserted its power to regulate that relationship. The Pennsylvania Labor Relations Board could not constitutionally entertain the petition for determination of the bargaining agent. In so doing, it was acting upon subject matter, regarding which Congress had asserted its power of regulation and jurisdiction over which had properly been delegated to the National Labor Relations Board. It is unnecessary to pass upon other issues presented in these appeals.

The appeals are sustained; the order of the court below is reversed for want of jurisdiction in the Board. Costs to be paid by appellee.