## Pennsylvania Labor Relations Board, Appellant, *v.* Frank.

Argued May 25, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George L. Reed*, with him *M. Louise Rutherford*, Deputy Attorney General, and *T. McKeen Chidsey*, Attorney General, for appellant.

*S. Dale Furst, Jr.*, with him *McCormick, Herdic & Furst*, for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1949:
This is an appeal from a decree of the Court of Common Pleas of Lycoming County, setting aside in

part an order of the Pennsylvania Labor Relations Board.

On August 28, 1946, the Pennsylvania Labor Relations Board issued an amended complaint alleging that Lester Frank, an individual engaged in the package delivery, drayage and express service business in the City of Williamsport, Pennsylvania, under the trade name of Frank Delivery Service, had engaged in unfair labor practices within the meaning of section 6, subsection (1), clauses (a), (c) and (e) of the Pennsylvania Labor Relations Act of 1937, P. L. 1168, as amended by section 1 of the Act of 1939, P. L. 293 (since amended by section 1 of the Act of 1947, P. L. 1445, 43 PS 211.6). The complaint was based on charges preferred by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 764, a labor organization affiliated with the American Federation of Labor. Local No. 764 also filed a petition with the Board alleging a controversy as to its right to act as the exclusive bargaining representative, and requesting investigation and certification, but this was later withdrawn. Frank filed an answer, reserving the right to question jurisdiction and denying the averments of the amended complaint. After hearing, the Board found Frank guilty of unfair labor practices as charged. Frank filed a petition for review of the order of the Board by the court below, which was granted, and the Board filed a petition for enforcement of its order. After argument, the court below held that the findings of the Board were not supported by substantial and legally credible evidence, as required, and entered a decree setting aside the order, except that part requiring Frank to bargain with Local No. 764, with the proviso that he should have the right to request a secret ballot of his employes within twenty days of a request by Local 764 for collective bargaining. This appeal by the Board was then taken.

The question of primary importance here is whether the jurisdiction of the Board was ousted by paramount federal authority under this Court's decision in *Pittsburgh Railways Company Employees' Case*, 357 Pa. 379, 54 A. 2d 891. Despite the fact that it was stipulated that the business of appellee is conducted under certificates of public convenience granted by both the Public Utility Commission of Pennsylvania and the Interstate Commerce Commission, and despite the fact that the uncontradicted evidence established that a substantial part of the business is distribution of carloads of meat, the Board made no finding of fact determining whether appellee was or was not engaged in interstate commerce. However, it was stated by Frank in a motion to dismiss this appeal for want of jurisdiction, and is stated in his brief, that sixty percent of his employes' time and forty percent of the total gross dollar volume of the business involves the distribution of refrigerated meat pool cars shipped to Williamsport from outside the State; and the Board concedes in its brief that the business forms a link to interstate railroad lines and other transportation lines serving Williamsport "as to a few meat packers".

In *Pittsburgh Railways Company Employees' Case*, supra, opinion handed down after argument of the present case in the court below, this Court held that in view of the National Labor Relations Act of July 5, 1935, 49 Stat. 449, 29 U. S. C. A. section 151 et seq., the Pennsylvania Labor Relations Board did not have jurisdiction to entertain a petition to determine the collective bargaining unit and collective bargaining agency for employes in an industry engaged in interstate commerce within the meaning of the Act, even though the issue presented had not been before the National Board. We there said (pp. 382, 386) : "Pittsburgh Railways is admittedly engaged in interstate commerce within the meaning of the National Labor Relations Act. . . .

Employer-employee relations with regard to the selection and determination of an appropriate bargaining unit, certification of a representative for purposes of collective bargaining *and prevention of unfair labor practices* are within the jurisdiction of the National Board . . . the clear implication of the decision of the Supreme Court of the United States in *Bethlehem Steel Co. et al. v. New York State Labor Relations Board* [330 U. S. 767, 67 Sup. Ct. 1026] is that wherever the employer-employee relationship is one over which Congress has the power of regulation and with regard to which Congress has acted, state power is suspended and cannot constitutionally be exercised. . . . The criterion to determine validity of the exercise of state power is not whether the agency administering federal law has acted upon the relationship in a given case; rather, it is whether Congress has asserted its power to regulate that relationship." When the present case was called for argument, counsel for the Board requested postponement because of the possible effect of the then pending decisions of the Supreme Court of the United States in *La Crosse Telephone Corporation v. Wisconsin Employment Relations Board*, 336 U. S. 18, 69 Sup. Ct. 379, *International Union, etc., v. Wisconsin Employment Relations Board*, 336 U. S. 245, 69 Sup. Ct. 516, and *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board*, 336 U. S. 301, 69 Sup. Ct. 584. The Board now contends that under these decisions the doctrine of the *Bethlehem Steel* case, supra, as interpreted by this Court in the *Pittsburgh Railways* case, cannot be held to apply in unfair labor practice cases—that "the controversial question whether the state has been ousted of its jurisdiction to entertain charges of unfair labor practices provided for in the state statute and which are also unfair labor practices under federal law, when the employer is engaged in interstate commerce", has now been

determined in favor of permitting state jurisdiction "unless there is a conflict in state and federal policy so that employes are deprived of rights protected or granted by the federal statute or the status of any of them under the federal statute is impaired".

The *La Crosse Telephone Corporation* case involved jurisdiction to issue certification of a union as the appropriate collective bargaining representative. The Supreme Court reversed a decision of the Wisconsin court that the State Board could exercise jurisdiction until and unless the National Board undertook to determine the appropriate bargaining representative or unit of representation of the employes. The opinion states (69 Sup. Ct. 382), quoting from the *Bethlehem Steel* case, supra: " 'The State argues for a rule that would enable it to act until the federal board had acted in the same case. But we do not think that a case by case test of federal supremacy is permissible here.' " The Court said further (69 Sup. Ct. 383): "The uncertainty as to which board is master and how long it will remain such can be as disruptive of peace between various industrial factions as actual competition between two boards for supremacy. We are satisfied with the wisdom of the policy underlying the Bethlehem case and adhere to it."

In the *International Union* case the Wisconsin court had held that state legislation authorized the State Employment Relations Board to order a labor union to cease and desist from instigating a "new technique for bringing pressure upon the employer", consisting of intermittent and unannounced work stoppages, and the question was whether it was beyond the power of the state to prohibit such course of conduct. It was held that the state legislation making the conduct an unfair labor practice was not superseded, for the reason (69 Sup. Ct. 521) that "Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board". It was pointed

out (69 Sup. Ct. 521) that "the federal Board has no authority to investigate, approve or forbid the union conduct in question" and therefore "this conduct is governable by the state or it is entirely ungoverned". The implication is clear from the language of the opinion that if the activities in question were within the authority of the federal Board to investigate, approve or forbid, the existence of such authority would immunize the activities from state control. In the *Algoma Plywood & Veneer* case, it was held that the jurisdiction of the state Board to issue an order requiring an employer to cease and desist from giving effect to the maintenance of membership clause of a collective bargaining agreement, under a provision of the State Employment Peace Act making it an unfair labor practice for an employer to enter into an all-union agreement with the representative of his employes unless approved by a specified majority of the employes, was not ousted, since the federal legislation, as construed by the Court, reserved to the states the power to pursue their own policies in the matter of union security agreements. The Court also held in that case that previous certification of the appellant union by the National Labor Relations Board did not oust the jurisdiction of the State Board, and in so holding, recognized (69 Sup. Ct. 591) that enumeration of unfair labor practices in the federal legislation vests in the National Board "exclusive jurisdiction" over the unfair practices enumerated and leaves the states free to enforce their own policies only "in matters not governed by the federal law".

We cannot agree with the interpretation the Board attempts to place on these decisions. Their unmistakable effect, considered in connection with the *Bethlehem Steel* case, is that the National Labor Relations Act gave the National Board exclusive jurisdiction in matters within the scope and cognizance of the Act, including the prevention of unfair labor practices

enumerated in section 8 of the Act, and closed the door to state action in regard to such matters. Since it is admitted that the alleged unfair practices here involved under section 6 of the Pennsylvania Labor Relations Act are also prohibited by section 8 of the National Act, it follows that the Board was without jurisdiction to act if appellee was engaged in interstate commerce within the meaning of the National Labor Relations Act. That this is so is confirmed by section 10(a) of the Labor Management Relations Act of 1947, 61 Stat. 136, c. 120, 29 U. S. C. A., section 160(a) and particularly the proviso authorizing the National Board to cede jurisdiction over unfair labor practice cases where state and federal law have parallel provisions.[1] If, as the Board contends, the state had authority to act where there were parallel provisions, adoption of the proviso would have been wholly unnecessary, since in the absence of an overlapping, there would be no impairment of state jurisdiction. The very purpose of the proviso was to meet the situation created by the *Bethlehem Steel* case, "where no State agency would be free to take jurisdiction of cases over which the National Board had declined jurisdiction": *Algoma Plywood & Veneer*

---

[1] Section 10(a) provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice [listed in section 8] affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided*, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith."

*Co. v. Wisconsin Employment Relations Board,* (69 Sup. Ct. 591).

That the question of jurisdiction was not pressed at the hearing before the Board does not now preclude its consideration on appeal. In the *Pittsburgh Railways* case, the question was not raised until after argument in this Court, and a reargument was granted and the case disposed of on jurisdictional grounds. See also *Magel v. Springs,* 338 Pa. 452, 454, 12 A. 2d 558. The absence of findings by the Board relating to the jurisdictional issue and appellee's failure to introduce all the available evidence on this subject is explained by the fact that at the time of the hearing before the Board it was the generally accepted practice to assume and exercise jurisdiction under the State Act so long as the National Board has not exercised or attempted to exercise jurisdiction. Appellee's averments as to the character of the business, if proved, would appear to require a finding that he is engaged in interstate commerce. Whether the business is predominantly interstate in character is not of controlling significance. Regarding a similar contention, it was said by Mr. Justice STONE in *National Labor Relations Board v. Fainblatt,* 306 U. S. 601, 606, 59 Sup. Ct. 668: "The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small. . . . The language of the National Labor Relations Act seems to make it plain that Congress has set no restrictions upon the jurisdiction of the Board to be determined or fixed exclusively by reference to the volume of interstate commerce involved. . . . The Act on its face thus evidences the intention of Congress to exercise whatever power is constitutionally given to it to regulate commerce by the adoption of measures for the prevention or control of certain specified acts—unfair labor practices—which provoke or tend to provoke strikes or labor disturbances affecting interstate commerce. Given

the other needful conditions, commerce may be affected in the same manner and to the same extent in proportion to its volume, whether it be great or small. . . ." See also separate opinion of Mr. Justice FRANKFURTER in *Bethlehem Steel Co. v. New York State Labor Relations Board,* 330 U. S. 767, 782, 67 Sup. Ct. 1026.

Under the circumstances we will remand the record with instructions to refer the case back to the Pennsylvania Labor Relations Board for the purpose of taking additional testimony to determine whether appellee is engaged in interstate commerce within the meaning of the National Labor Relations Act, and for further proceedings not inconsistent with this opinion.

The decree of the court below is set aside, pending a determination of the jurisdictional issue, and the record is remanded for further proceedings consistent with this opinion. Costs of this appeal to abide final result.