Garner *v.* Teamsters, Chauffeurs and Helpers,
Local Union No. 776, Appellant.

Argued May 28, 1952. Before DREW, C. J., STERN,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused
March 24, 1953.

*Sidney G. Handler,* with him *Edward Davis* and *Douglass, Handler, Rosenberg & Ware,* for appellants.

*James H. Booser,* with him *David S. Kohn* and *Mc-Nees, Wallace & Nurick,* for appellees.

*M. Herbert Syme* submitted a brief for Pennsylvania Federation of Labor, amicus curiae.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, February 13, 1953:

Plaintiffs, Joseph Garner and A. Joseph Garner, trading as Central Storage and Transfer Company, are engaged in the trucking and storage business in Harrisburg. Their principal office there was at 11th and State Streets, but they maintained terminal and platform facilities at the rear of the Reading Railroad Freight Station at 9th and Market Streets, where they operated a local freight pick-up and delivery service for the Reading Railroad Company and its trucking division, the Reading Transportation Company, (with both of which it had contracts), as well as with some fifteen other trucking firms. Some of the freight handled by them is shipped on the Reading Railroad from points outside the State to consignees in Harrisburg. They employ 24 persons as truckers, helpers and platform men; only 4 of these are members of Teamsters, Chauffeurs and Helpers, Local Union No. 776 (A.F.L.), an unincorporated labor organization the members of which are engaged as truck drivers and helpers in the same industry in which plaintiffs are also engaged. Plaintiffs have never objected, and do not presently object, to any of their employes joining the Union.

On June 7, 1949, rotating pickets, two at a time, none of whom was an employe of plaintiffs, were placed by the Union, one in front of, and the other at

the entrance to, plaintiffs' Reading loading platform; they carried signs bearing the following legend: "Local 776 Teamsters Union (A. F. of L.) wants Employees of Central Storage and Transfer Co. to join them to gain union wages, hours and working conditions." This picketing was conducted at all times in an orderly and peaceful manner. Neither then nor at any other time has there been any controversy or labor dispute between plaintiffs and their employes, none of whom was on strike. While the picketing continued union truck drivers and helpers employed by the Reading Transportation Company and other interchange carriers refused to cross the picket line; as the bulk of plaintiffs' operations was with unionized trucking concerns the consequence was that their local business fell off 95%, causing a loss to them of between $400 and $500 per day, in addition to which they stood to have their contract with the Reading Transportation Company cancelled and their terminal facilities with the Reading Railroad Company vacated.

Plaintiffs, on June 9, 1949, brought a bill in equity against the Union to enjoin the picketing, and, on June 17, 1949, the court, after hearing testimony offered by both parties, decreed that a preliminary injunction should issue as prayed for. Subsequently additional testimony was taken on final hearing, and, on September 4, 1951, the court entered a decree nisi enjoining and restraining defendants from picketing plaintiffs' Reading pick-up and delivery terminal; exceptions filed by defendant were dismissed, and a final decree was entered on March 3, 1952 in accordance with the decree nisi. From that final decree defendants now appeal.

It is defendants' contention that the picketing carried on by them was solely for organizational purposes, that is, to persuade plaintiffs' non-union em-

ployes to join the Union. If such was indeed the fact the picketing was constitutionally protected and should not have been enjoined (*Carnegie-Illinois Steel Corp. v. United Steelworkers of America*, 353 Pa. 420, 430, 431, 45 A. 2d 857, 861). But if, on the other hand, the primary or paramount object was to coerce plaintiffs, the employers, to commit a violation of section 6(c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168 (which provides that "It shall be an unfair labor practice for an employer . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization;") such picketing would have been, by the law of the State, for an unlawful purpose and, if the State court had jurisdiction in spite of the fact that plaintiffs were largely engaged in interstate commerce, it was proper to enjoin it: *Wilbank v. Chester & Delaware Counties Bartenders, Hotel and Restaurant Employees Union*, 360 Pa. 48, 60 A. 2d 21 (cert. den. 336 U. S. 945); *Phillips v. United Brotherhood of Carpenters and Joiners of America*, 362 Pa. 78, 66 A. 2d 227; *Carpenters & Joiners Union of America, Local No. 213, v. Ritter's Cafe*, 315 U. S. 722; *Giboney v. Empire Storage & Ice Co.*, 336 U. S. 490; *Hughes v. Superior Court of California for Contra Costa County*, 339 U. S. 460; *International Brotherhood of Teamsters Union, Local 309, v. Hanke*, 339 U. S. 470; *Building Employees International Union, Local 262, v. Gazzam*, 339 U. S. 532.

Consideration cannot be given here to the merits of the controversy if the State courts lack jurisdiction in view of the fact that the Labor Management Relations Act—the so-called Taft-Hartley Act—of 1947, c 120, 61 Stat. 136, 29 U.S.C.A. (Pocket Part) §141 et seq., also provides, §101, amendatory section 8(a)(3),

as does our State Act, that "It shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization". It further provides, by an additional amendatory section 8(b)(2), that "It shall be an unfair labor practice for a labor organization or its agents . . . to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section . . . ." Thus it will be seen that the Act of Congress prohibits the same activity on the part of a labor organization in this respect as does the Pennsylvania Labor Relations Act, the only difference being that the Federal act would stamp this picketing as an unfair labor practice, whereas the State act does not so list it but our courts have declared it to be unlawful because aimed to coerce the employer into committing what the act does declare to be an unfair labor practice on his part.

The problem presented, therefore, is whether, under such circumstances, the Labor Management Relations Act constituted an absolute and complete preemption of the field so as to preclude State action, and the test of decision is the intention of Congress in that regard, that is, whether it has manifested a willingness that the States should exercise concurrent jurisdiction in such a case. There is no express provision in the Federal legislation directly determining the question; Congress did not see fit therein expressly to declare a general policy or to state specific rules as to their effects on state regulation of various phases of labor relations over which the several states traditionally have exercised control; *International Union, U. A. W. A., A. F. of L., Local 232, v. Wisconsin Employment Relations Board,* 336 U. S. 245, 252. There-

fore it has been held by the Supreme Court of the United States that there are many phases of labor relations affecting interstate commerce in which the equity powers of the State remain intact. Thus the State is not excluded from exercising its police power, and therefore, if picketing is attended by violence and threatens personal injury or property damage to the employer or to employees desiring to work, a State agency may prohibit such picketing: *Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America, v. Wisconsin Employment Relations Board,* 315 U. S. 740. Where a union, in order to bring pressure on an employer, adopted a plan whereby union meetings of employes were called at irregular times during working hours, thereby causing a constant succession of work stoppages, it was held that neither the National Labor Relations Act—the so-called Wagner Act—c. 372, 49 Stat. 449, 29 U.S.C.A. §151 et seq., nor the Labor Management Relations Act made any express delegation of power to the National Labor Relations Board to permit or forbid this particular union conduct from which an exclusion of state power could be implied: *International Union, U. A. W. A., A. F. of L., Local 232, v. Wisconsin Employment Relations Board,* 336 U. S. 245. Where an employe was discharged by an employer for refusal to pay union dues, in violation of a State statute which forbade enforcement of a maintenance-of-membership clause except under certain conditions not then fulfilled, it was held that the Labor Relations Board of the State could order the employer to cease and desist from giving effect to such clause, that such order was not in conflict with either the National Labor Relations Act or the Labor Management Relations Act, and that the certification of the union by the National Board did not oust the jurisdiction of the State Board

to prohibit practices forbidden by State law and not governed by Federal law: *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board*, 336 U. S. 301. Our own court has held that a union may be enjoined in our State courts from acting in disregard of a collective bargaining agreement, notwithstanding the prohibition by the so-called Norris-LaGuardia Act, c. 90, 47 Stat. 70, 29 U.S.C.A. §101 et seq. of the issuance of injunctions in labor disputes except on certain conditions, and notwithstanding also the fact that the Labor Management Relations Act provided that suits for violation of contracts between an employer and a labor organization representing employes in an industry affecting interstate commerce might be brought in any district court of the United States: *General Building Contractors' Association v. Local Union No. 542*, 370 Pa. 73, 87 A. 2d 250.

On the other hand, it is equally well-settled that where there is actual conflict between the provisions of a State statute and the National Labor Relations Act in regard to regulation of labor union activities in an industry affecting interstate commerce, the State act must give way to the Federal act: *Hill v. Florida*, 325 U. S. 538; *International Union of United Automobile Workers of America, C.I.O., v. O'Brien*, 339 U. S. 454; *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Division 998, v. Wisconsin Employment Relations Board*, 340 U. S. 383. Where a State Labor Relations Board undertook, under a State act, to certify certain unions as collective bargaining representatives after the National Labor Relations Board had refused to certify such unions on the ground that to do so would obstruct the purposes of the National Labor Relations Act, it was held that such certification by the State Board was invalid as being in conflict with the Fed-

eral legislation, it being pointed out that two administrative bodies might produce a mischievous conflict if they attempted to exercise discretionary control over the same subject matter: *Bethlehem Steel Co. v. New York State Labor Relations Board,* 330 U. S. 767. Even where the National Labor Relations Board had not already undertaken to determine the appropriate collective bargaining representative, it was held that the State Board had no jurisdiction to certify a certain union as such representative and therefore that its attempted certification was invalid: *La Crosse Telephone Corp. v. Wisconsin Employment Relations Board,* 336 U. S. 18. Our Court has similarly held, in *Pittsburgh Railways Company Substation Operators and Maintenance Employees' Case,* 357 Pa. 379, 54 A. 2d 891, that in view of the National Labor Relations Act the Pennsylvania Labor Relations Board did not have jurisdiction to entertain a petition to determine the collective bargaining agent for employes in an industry engaged in interstate commerce, even though the issue presented had not been before the National Board. And in *Pennsylvania Labor Relations Board v. Frank,* 362 Pa. 537, 67 A. 2d 78, where the Pennsylvania Labor Relations Board made an order on an employer to cease and desist from engaging in an unfair labor practice, in that he had coerced and interfered with his employes in the exercise of their rights of self-organization and collective bargaining, it was held that, since the alleged unfair labor practice was prohibited also by the Labor Management Relations Act, the State Board was without jurisdiction to act even though the case had not been before the National Board.

In the light, then, of all these decisions, the question recurs whether Congress intended to exclude State action enjoining picketing which constituted an unfair

labor practice on the part of a labor organization under the provisions of the Labor Management Relations Act, where such picketing was unlawful also under the State law.

Turning to the National Labor Relations Act of 1935—the Wagner Act—it appears that by section 10(a) of that Act, 29 U.S.C.A. §160(a) the National Labor Relations Board was empowered to prevent any person from engaging in any unfair labor practice affecting interstate commerce, such power to be *"exclusive"* and not to be "affected by any other means of . . . prevention that has been or may be established by . . . law, or otherwise." By §101, amendatory section 10(a) of the Labor Management Relations Act, 29 U.S.C.A. (Pocket Part) §160(a), the provision that the power should be exclusive was eliminated, leaving the rest of the provision quoted intact, and adding a proviso that the Board was empowered to cede to any State agency jurisdiction over cases in any industry (with certain exceptions not here relevant) even though such cases might involve labor disputes affecting interstate commerce, unless the provision of the State statute applicable to the determination of such cases was inconsistent with the corresponding provision of the Federal act. The Labor Management Relations Act further provided, subsection (b), that when a charge of unfair labor practice was made to the National Board it should proceed to hear the complaint, expeditiously and if possible within ten days (subsection (i)), and it was given the power (subsection (e)), to petition a Federal court for enforcement of its order and for appropriate temporary relief or restraining order, any person aggrieved by the final order of the Board having the right to obtain a review thereof (subsection (f)); the Board was also given power (subsection (j)), when it issues a complaint of an unfair la-

bor practice, to petition a district court of the United States for appropriate temporary relief or restraining order. It will thus be seen that the Labor Management Relations Act provided a complete remedy whenever there was a charge presented to it of an unfair labor practice,—immediate injunctive relief on petition of the Board, a final hearing by the Board, a review of such order in the Federal court. In our opinion such provisions for a comprehensive remedy precluded any State action by way of a different or additional remedy for the correction of the identical grievance.

It was pointed out in *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board,* 336 U. S. 301, 306, that the House Report commenting upon section 10(a) of the National Labor Relations Act said that " 'The Board is thus made the paramount agency for dealing with the unfair labor practices described in the bill.' " and that the Senate Report described the purpose of the section as " 'intended to dispel the confusion resulting from dispersion of authority and to establish a single paramount administrative or quasi-judicial authority in connection with the development of the Federal American law regarding collective bargaining.' " The court, therefore, concluded that "So far as appears from the Committee Reports . . . §10(a) was designed, as its language declares, merely to preclude conflict in the administration of remedies for the practices proscribed by §8."

It seems to us unmistakable that it was the intention of Congress that, if an activity of a labor organization might be held to constitute one of the unfair labor practices enumerated in §101, added amendatory section 8(b) of the Labor Management Relations Act, the power to determine that question and the action that should be taken in the matter were to be vested in a

single agency, namely, the National Labor Relations Board, in order that thereby a uniform national policy might be developed and enforced. And it seems crystal clear that the purpose of the amendment by that act of section 10(a) of the National Labor Relations Act, eliminating the term "exclusive", was for the purpose only of providing that the National Board *might,* if it saw fit in the case of certain industries, cede jurisdiction to a State agency where there was no inconsistency in the provisions of the State and Federal statutes. This proviso would seem to emphasize the power of the National Board to pass initially upon each such case, since it obviously implies that a State agency was to exercise jurisdiction only if ceded to it by the National Board. As pointed out in *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board,* 336 U. S. 301, 313, and followed in *Pennsylvania Labor Relations Board v. Frank,* 362 Pa. 537, 544, 67 A. 2d 78, 81, in regard to this proviso, if the State had authority to act, in the absence of such cession by the National Board, where State and Federal law had parallel provisions, adoption of the proviso would have been wholly unnecessary, since in the absence of an overlapping there would be no impairment of State jurisdiction. Cf. *Amazon Cotton Mill Co. v. Textile Workers Union of America,* 167 F. 2d 183; *Gerry of California v. Superior Court of Los Angeles County,* 32 Cal. 2d 119, 194 P. 2d 689; *Plankinton Packing Co. v. Wisconsin Employment Relations Board,* 338 U. S. 953, reversing, per curiam, the judgment of the Supreme Court of Wisconsin reported in 255 Wis. 285, 38 N.W. 2d 688, where the State court had held that the State Board had jurisdiction over charges that a labor union and an employer were guilty of unfair labor practices.

It is our opinion, therefore, that, since the plaintiff employers in the present case were engaged in interstate commerce, and the charge made by them was that the defendant Union was engaged in an activity which was unlawful under the law of the State but which also constituted an unfair labor practice under the provisions of the Labor Management Relations Act, and since that act provides an adequate and complete administrative remedy to prevent the continuance of such activity if the charge be substantiated, the Court of Common Pleas of Dauphin County had no jurisdiction to issue an injunction in this case against the defendant. Plaintiffs' remedy must be sought by them in proceedings before the National Labor Relations Board, where an injunctive remedy, as previously pointed out, is available.

The decree is reversed at cost of appellees, and the bill is dismissed for want of jurisdiction.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

Plaintiffs, who are engaged in the trucking and storage business in Harrisburg, sought and obtained an injunction restraining a union, its officers and agents, from peacefully picketing its platform facilities at a railroad station where the plaintiffs operated a local freight pick-up and delivery service. The picketing caused tremendous losses and irreparable damage to the plaintiffs. Some of plaintiffs' business was inter-state.

The Courts of Pennsylvania have hitherto always taken jurisdiction in cases involving alleged irreparable damage or injury, including cases involving labor-industrial disputes, and have then decided each particular case on its own facts and merits. The basic

reasons are (1) there is no adequate remedy at law to compensate for irreparable damage, and (2) irreparable damage cannot as a practical matter be prevented by the slow process authorized under existing Congressional Acts.

Defendants contend that the picketing was peaceful and was conducted solely for organizational purposes, namely, to persuade plaintiffs' non-union employees to join the union. Peaceful picketing for a lawful purpose conducted in a lawful manner, is protected by both our State and Federal Courts: *Wortex Mills, Inc. v. Textile Workers Union*, 369 Pa. 359, 85 A. 2d 851; *Thornhill v. Alabama*, 310 U. S. 88; *Carlson v. California*, 310 U. S. 106; *Cafeteria Employees Union v. Angelos*, 320 U. S. 293; *A. F. of L. v. Swing*, 312 U. S. 321; *Carnegie-Illinois Steel Corp. v. United Steelworkers of America*, 353 Pa. 420, 45 A. 2d 857. If the peaceful picketing was conducted solely for organizational purposes and in a lawful manner, I agree with the majority that it would not violate the Constitution or the laws of Pennsylvania and should not be enjoined. If on the other hand one of the objectives of the peaceful picketing was for an unlawful or illegal purpose or objective or, more particularly, was to coerce an employer to violate the Pennsylvania Labor Relations Act of June 1, 1937, as amended, then such picketing is subject to the jurisdiction of a Court of Equity and should be enjoined. *Hughes v. Superior Court of California*, 339 U. S. 460; *Building Service Union v. Gazzam*, 339 U. S. 532; *Giboney v. Empire Storage & Ice Co.*, 336 U. S. 490; *Carpenters & Joiners Union v. Ritter's Cafe*, 315 U. S. 722; *International Brotherhood of Teamsters, Etc., Union, Local 309, et al. v. Hanke, et al.*, 339 U. S. 470; *Wortex Mills, Inc. v. Textile Workers Union*, 369 Pa. supra; *Wilbank v. Chester & Delaware Counties Bartenders Union*, 360

Pa. 48, 60 A. 2d 21; *Phillips v. United Brotherhood of Carpenters*, 362 Pa. 78, 66 A. 2d 227.

Where peaceful picketing causes irreparable damage and one of its objectives violates not only a statute of Pennsylvania but also a provision of the Taft-Hartley Act, the jurisdiction of State Courts has not yet been specifically decided by Congress or by the Supreme Court of the United States. If no question of the Taft-Hartley Act were involved, it would be clear and unquestionable that Courts of Equity in Pennsylvania have always possessed and exercised and do still possess and exercise jurisdiction upon facts such as are alleged in the instant case, viz., irreparable damage and a violation of the Pennsylvania Labor Relations Act.

A Sovereign State should not be deprived of any of its sovereign rights and powers except by the clear and express mandate of the Constitution or of Congress or of the Supreme Court of the United States. In the *Wortex Mills* case, 369 Pa., supra, we said (page 364) : "It is well to recall that a State or other Sovereign has a paramount right and an inescapable duty to maintain law and order, to protect life, liberty and property and to enact laws and police regulations for the protection and preservation of the safety, health and welfare of the people of the state or community; Carnegie-Illinois Steel Corp. v. U. S. W. of A., 353 Pa. 420, 426, 45 A. 2d 857; Westinghouse Electric Corp. v. United Electrical Workers, 353 Pa. 446, 460, 46 A. 2d 16.

'The power and duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents cannot be doubted': Thornhill v. Alabama, 310 U. S. 88, 105; Carlson v. California, 310 U. S. 106, 113. The sovereign powers of a State should be protected and sus-

tained except where restricted by the Federal or State Constitution and except where 'an "intention of Congress to exclude States from exerting their police power [is] clearly manifested." Napier v. Atlantic Coast Line R. Co., 272 U. S. 605, 611, and cases cited; Kelly v. Washington, 302 U. S. 1, 10; South Carolina Highway Dept. v. Barnwell Bros., 303 U. S. 177; H. P. Welch Co. v. New Hampshire, 306 U. S. 79, 85; Maurer v. Hamilton, 309 U. S. 598, 614; Watson v. Buck, supra': Allen-Bradley Local v. Wisconsin E. R. Board, 315 U. S. 740, 749."

The jurisdiction of State Courts to enjoin picketing, including peaceful picketing which is conducted in an unlawful manner or for an unlawful purpose, has been sustained by the Supreme Court of the United States in over a dozen recent cases, some of which are reviewed in *Wortex Mills v. Textile Workers,* 369 Pa., supra, and in the dissenting opinion in *American Brake Shoe Co. v. District Lodge 9,* 373 Pa. 164, 94 A. 2d 884.

Moreover, in *Auto Workers v. Wisconsin Employment Relations Board,* 336 U. S. 245, 253, Mr. Justice JACKSON, in sustaining an injunction against a union by a State Court of Wisconsin in matters affecting interstate commerce, said: ". . . we have said of the National Labor Relations Act what is equally true of the Labor Management Relations Act of 1947, that 'Congress designedly left open an area for state control' and that the 'intention of Congress to exclude States from exercising their police power *must be clearly manifested.'** Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U. S. 740, 750, 749. . . . While the Federal Board is empowered to for-

---

\* Italics throughout, ours.

bid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal— even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states. . . . This conduct is governable by the State or it is entirely ungoverned."

The Supreme Court of the United States has not specifically decided the question here involved and a number of decisions of that Court and of this Court indicate that the State Courts still have jurisdiction upon these or similar facts. Since the intention of Congress to exclude State Courts from exercising their traditional and long-established equity powers in this class of case is not clearly manifested I would uphold and sustain the jurisdiction of our State Courts.

For these reasons—*without discussing or deciding the merits of the case*—I dissent.