RICHMAN BROTHERS CO., Plaintiff, v. AMALGAMATED CLOTHING
WORKERS OF AMERICA et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 641936.  Decided June 27, 1955.

Luther Day, Earl W. LeFever, George D. Bonebrake, George H.
Rudolph, Jones, Day, Cockley & Reavis, Cleveland, for plaintiff.
William J. Isaacson, New York City, N. Y., Smoot & Riemer, Cleveland, for defendants.

## OPINION

By LYBARGER, J.

This cause comes before the court on what the defendants (hereinafter called "Amalgamated") designate as a "Motion to vacate judgment and dismiss petition," on the ground that this court lacks jurisdiction of the subject matter of the action.

It will be helpful to review what has happened here and in the federal courts before the filing of the present motion. This action arose in this court October 18, 1952, when The Richman Brothers Company (hereinafter called "Richman") sought to restrain Amalgamated from picketing its stores in Ohio and fifteen other states.

On March 12, 1953, this court overruled a motion by Amalgamated to

dismiss the suit, holding that the National Labor Relations Board did not have jurisdiction over it, and that the state court did.

Amalgamated made an unsuccessful effort to remove the case to the United States District Court, and then asked that court to enjoin Richman from proceeding herein on the ground that the state court lacked jurisdiction over the subject matter of the action. On March 25, 1953, the District Court held that it was prohibited by Section 2283 of the Judicial Code from enjoining this court. This decision was affirmed March 30, 1954, by the United States Court of Appeals for the Sixth Circuit (211 Fed. [2d], 449 [55 O. O. 289]) and by the Supreme Court of the United States on April 4, 1955 (348 U. S., 643 [56 O. O. 249]).

Meanwhile this court heard arguments on Richman's motion for a temporary restraining order against picketing and granted the same April 20, 1953. (See 51 O. O. 145.) 65 Abs 273.

Coming to a consideration of Amalgamated's present motion, the court is first confronted by the procedural problem of how to deal with the motion. There has been no judgment of this court, as that term is used in the Revised Code of Ohio. Sec. 2323.01 R. C. says that "a judgment is the final determination of the rights of the parties in action."

Here an injunction was ordered as a provisional remedy under authority granted in Chapter 2727 R. C. By like token a party may apply to the court to vacate such injunction (§2727.14 R. C.). The court, therefore, will treat Amalgamated's pleading as a motion to dissolve the temporary restraining order of April 20, 1953, and will entertain such motion because since this court's original order, the appellate courts of Ohio and the Supreme Court of the United States have handed down decisions which, Amalgamated contends, bear upon the issue here involved.

Amalgamated's motion also prays that Richman's petition herein be dismissed on the ground that this court is without jurisdiction. The question of jurisdiction is one which may be raised at any stage of a judicial proceeding. If jurisdiction is lacking, it is a fatal defect. It is the facts of a case, not merely the words used to describe them, that indicate jurisdiction or the lack of it. Here the facts on which Richman bases its cause are fully set forth in the petition. Further, on the hearing they were brought to the attention of the court. They are reflected in the court's opinion bearing on the temporary restraining order. It is impossible for the facts to have changed since the granting of the injunction. If, therefore, the court has jurisdiction it should proceed to hear the case on its merits, without further pleading. If it lacks jurisdiction, then without further pleading the cause should be dismissed, to the end that the question at issue may be speedily tested in the appellate courts.

With a view to passing on the issue here involved the court has reviewed the facts that are alleged in the pleadings; that were brought forward by Richman on the hearing in the form of affidavits; that were quoted in the briefs and arguments of counsel, and that are reflected in the opinions of the several courts which have passed on phases of the case.

Richman is a corporation of Ohio engaged in the manufacture and retail sale of wearing apparel, with eighteen stores in fifteen cities of Ohio and fifty-one stores in thirty-one cities of fifteen other states in the United States (plaintiff's Exhibit 1, page 1). Amalgamated embraces labor unions, composed of clothing workers, which in 1951 inaugurated an effort to organize Richman's manufacturing employees.

The gist of Richman's cause of action is the general allegation in paragraph fourteen of its petition: "* * * the defendants are now engaged in carrying forward a conspiracy to cause economic pressure to be directed against plaintiff with the intention and for the purpose and objective of thereby causing plaintiff to force sufficient of its eligible employees to become members of defendant Amalgamated, so that defendant Amalgamated may become the representative of its such employees for the purpose of collective bargaining with plaintiff, regardless of the desires of a majority thereof."

Richman alleges, and it is sustained by statements in defendant's Exhibit 1 (the affidavit of George H. Richman), that Amalgamated has caused various Richman's stores to be picketed "generally by one or two, in some instances by several, in others by many, pickets at each picketed store;" also that there have been "special sporadic picketing demonstrations" in front of individual stores in eleven cities, on which occasions "as many as fifteen to twenty and in some instances more persons," would mill about in front of a store and so block "the entrance of the picketed store as to divert much of the pedestrian traffic on the sidewalk outwardly from the entrance" (plaintiff's Exhibit 1, paragraph 18, page 8). At the same time, in neither Richman's petition, nor its sustaining affidavits, are there allegations of "mass picketing" or "obstructing of the streets," unless the statement just quoted can be construed as such. The court finds no allegation or proof of the use of force, violence or intimidation.

The federal appellate courts which have dealt with one phase of this case, having a transcript of record before them, have characterized the union effort as "peaceful picketing." The Court of Appeals for the Sixth Circuit said in passing: "Nor is this a case of mass picketing, threatening of employees, obstructing-streets and highways, or picketing homes." See 211 Fed. [2d], 449 [55 O. O. 289].)

The Supreme Court says in the second paragraph of its decision: "Petitioner, an unincorporated association of clothing workers, was responsible for peaceful picketing of a number of respondent's retail stores * * *." (See 348 U. S., 643 [56 O. O. 249].)

From the above, the court concludes that in spite of a number of "special, sporadic picketing demonstrations," it is fair to denominate the actions by Amalgamated as peaceful picketing.

It is Richman's contention that in the absence of any dispute between it and the union, the conspiracy of Amalgamated is contra to the public policy of Ohio and as an unreasonable restraint of trade is a violation of the Valentine Act, Chapter 1331 R. C.

On the other hand, Amalgamated takes the position that it had a right to engage in the activities above described, but that even if such were not the case Richman's grievance against the union is within the

exclusive jurisdiction of the National Labor Relations Board so that this court is without jurisdiction to entertain it.

Thus there is presented to the court the issue of whether or not, in view of recent appellate decisions, a state court has jurisdiction over this controversy or whether Richman must seek relief from the N. L. R. B.

When this court granted the temporary restraining order April 20, 1953, it held that Amalgamated had violated the public policy and laws of Ohio in that its actions were "for the unlawful purpose of forcing an employer to force * * * unionization of its help * * *," and that in doing so Amalgamated had "unlawfully injured * * *others in their rights." The court grounded its opinion on Crosby v. Rath, 136 Oh St 352, 16 O. O. 496, and Anderson v. Brotherhood, 156 Oh St 541, 46 O. O. 460. In so doing the court was correctly interpreting the law in the light of the precedents then prevailing.

At that time the provisions of the National Labor Relations Act, as amended by the Taft-Hartley Act (29 U. S. C. A., Sec. 141, et seq.) were comparatively new and had not been extensively interpreted by the courts. Slowly, however, that process has gone forward, although even today, as Mr. Justice Frankfurter observed in Weber v. Anheuser-Busch, Inc., 348 U. S., 593, "the areas that have been pre-empted by Federal authority and thereby withdrawn from state power are not susceptible of delineation by fixed metes and bounds." Nevertheless recent decisions have more clearly defined the boundaries between state and federal authority in labor disputes, and the court must take cognizance of them.

Two sections of NLRA as amended, that is, the Labor-Management Relations Act, are brought into focus in the instant case.

Section 7, defining "Rights of Employees," says: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8 (a) (3)."

Section 8, on "Unfair Labor Practices," says in part: "(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain or coerce employees in their exercise of the rights guaranteed in Section 7.

"* * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

"* * *

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of rights guaranteed in Section 7 * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *."

A decision of far-reaching importance in interpreting the sections of N. L. R. A., as amended, here involved is Garner v. Teamsters' Union, 346 U. S., 485, decided by the Supreme Court on December 14, 1953. The holding of the court is thus summarized by the Supreme Court of Ohio in **Grimes & Hauer, Inc., v. Pollock, 163 Oh St 372, 56 O. O. 343:**

"* * * a labor union peacefully picketed the premises of an interstate trucking company in Pennsylvania. Such picketing had for its purpose the unionization of the company's employees. There was no labor dispute between the company and its employees and the company did not object to its employees becoming union members. At the instance of the employer, a Pennsylvania Court of Common Pleas enjoined the picketing as in violation of the State Labor Relations Act. On appeal the Supreme Court of Pennsylvania (373 Pa., 19, 94 A. [2d], 893), although finding that the object of the picketing was to coerce the employer to have its employees join the union, reversed the judgment of the lower court, on the ground that the situation came within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices, and, therefore, state courts were precluded from assuming jurisdiction."

The Garner case did not hold that the state courts were deprived of jurisdiction in every case, since they may still exercise their "historic powers over such traditionally local matters as public safety and order and the use of streets and highways." (Garner case, supra, page 488.) But it did clearly indicate that since Congress had pre-empted the field of unfair labor practices as defined in N. L. R. A., then the state courts must yield jurisdiction to the National Labor Relations Board in dealing with the unfair practices specified in the act.

The impact of the Garner case has been widespread. This is illustrated by the course of the case of Grimes & Hauer, Inc., v. Pollock in this court and the Court of Appeals for this district in Ohio.

The decision of this court, reported in **51 O. O. 142,** held that: (Syllabus) "Picketing with intent of coercing an employer to assist the union in its effort to organize his business is unlawful in purpose and contrary to the public policy of the State of Ohio." In reaching this conclusion the court relied on Crosby v. Rath, cited above, just as this court did in granting the temporary injunctioin herein.

On November 16, 1953, the Court of Appeals of the 8th District, reviewed the Grimes & Hauer case (115 N. E., [2d], 468) and sustained this court's order against picketing, holding that the state court had jurisdiction. It quoted with approval from **Bean v. Local Union No. 698, 94 Oh Ap 361, 51 OO 152,** as follows:

"In the absence of a dispute between employer and employees, or between the union and the employer or employees, a labor union may not engage in organizational picketing, even though peaceful, for the purpose of bringing pressure to bear upon the employer to require his employees to join the union." (Syllabus.)

After the Supreme Court of the United States handed down the Garner decision, the Court of Appeals granted a rehearing in Grimes & Hauer, Inc., v. Pollock, with the result that it reversed its original holding and decided, on the basis of the Garner case, that the Common Pleas Court of this county lacked jurisdiction because of the provisions of the

Taft-Hartley Act. In 54 O. O. 433, the court's decision is summarized in syllabus 2:

"Where members of a labor union picket plaintiff's place of business for the purpose of coercing the plaintiff employer to get its employees to join their union, the picketing, even though peaceful and orderly, will not be enjoined by the state courts, since plaintiff's complaint is exclusively within the jurisdiction of the National Labor Relations Board."

The Grimes & Hauer, Inc., case was taken to the Supreme Court of Ohio, and a decision was there given on May 25, 1955. It is reported in **163 Oh St 372, 56 O. O. 341.** In sustaining the Court of Appeals, the Supreme Court held that the Garner case was controlling. The law in the syllabus reads:

"Because of the decision of the Supreme Court of the United States in the case of Garner v. Teamsters, Chauffeurs & Helpers Local No. 776, 346 U. S., 485, where a labor union is in dispute with an employer engaged in interstate commerce over the unionization of the employer's non-union employees and the union pickets the business locations of such employer in an orderly and peaceful manner, a state court is without jurisdiction to enjoin the picketing; a controversy of this kind comes within the provisions of the Labor Management Relations Act (Section 151 et seq., Title 29, U. S. Code), as it relates to unfair labor practices; and the employer must, initially at least, pursue the remedy of presenting his grievance to the National Labor Relations Board."

It is significant that the court had before it the Richman case, which had been decided April 4, 1955, and made this comment **(56 O. O. at page 344):**

"As to the case of Amalgamated Clothing Workers of America v. Richman Brothers (U. S., April 4, 1955), we adopt the comments of counsel for the defendants herein as follows:

" 'The precise issue decided by the United States Supreme Court in this case was that Section 2283 of the Judicial Code bars federal District Courts from enjoining an employer's prosecution of state court action for injunction against pickketing. However, in so holding, the Supreme Court specifically affirmed that its decisions in Weber v. Anheuser-Busch, Inc., 348 U. S., 593, and Garner v. Teamsters' Union, 346 U. S., 485, had disposed of the issue of state courts' power in peaceful organizational picketing cases saying:

" 'We may assume that the conduct in controversy (peaceful picketing) is subject to whatever relief the Taft-Hartley Act may afford, and, therefore is outside state authority ' "

An issue similar to that confronting this court arose in the Harlan Circuit Court of Kentucky and was finally decided by the Court of Appeals. Kentucky's highest court, May 20, 1955. In National Electric Service Corp. v. District 50, United Mine Workers, reported in 28 Labor Cases 89,095, the circumstances resembled those in the instant case, although differing in some details.

The Circuit Court granted a permanent decree in 1953 enjoining the union from picketing National's plant, from interfering with its business by means of threat and intimidation and from attempting

to coerce its employees to designate the union as their bargaining representative contrary to a provision of a state statute.

With the decision of the Garner case the union moved to set aside the judgment on the ground that it was void for lack of jurisdiction.

The court's holding is summarized in the syllabus:

"A change in law after the entry of a temporary or permanent injunctive decree is sufficient ground for modification or vacation of the original judgment, not by reason of the void or voidable aspect of the original decree, but through the equity court's inherent power to correct that which it is no longer equitable to enforce. A court of equity which permanently enjoined a union from picketing an interstate employer's premises on the ground that the picketing was being conducted for the unlawful purpose of coercing the employer to compel his eligible employees to become members of the picketing union had the right and duty to vacate the permanent injunction upon a showing by the union that under a rule established by the U. S. Supreme Court after entry of the injunction, the union conduct complained of was regulated by the NLRA and was within the exclusive jurisdiction of the NLRB. The equity court's action was proper, although a year had elapsed from entry of the injunctive decree, where taken within a reasonable time after the rule had been fixed by the U. S. Supreme Court."

In the last paragraph of its opinion the court said:

"In the case at bar, the trial court stated in its opinion the injunction was issued on the sole ground that the picketing had the unlawful purpose of coercing the employer to compel its eligible employees to become members of the union. The Garner case removed the power to use an injunction based on that ground. The Chancellor, in exercise of his inherent power, was well within his right and duty in setting aside the injunction because of the subsequent change in law.

The court has also reviewed the case of Weber v. Anheuser-Busch, Inc., cited above, and observes that it is authority for the proposition that a state court does not have jurisdiction to enjoin conduct which violates a state statute against restraint of trade but also comes within federal authority under the Taft-Hartley Act.

In his opinion in Amalgamated Clothing Workers v. Richman, cited above, Justice Frankfurter compared the situation in the instant case to that in the Weber case, saying in the first paragraph: "In this (the Richman) case we have to decide the question whether, **under similar circumstances**, a union has open to it * * * jurisdiction of a Federal district court * * *." This appears to be a studied observation that in general the circumstances of the two cases are similar.

Now the court has in view the contention of Richman's learned counsel that the instant case may be distinguished from Garner, Grimes & Hauer, Inc., National Electric Service Corp. and Weber, cited above. In this connection the court's attention has been directed to Radio Officers Union v. Labor Board, 347 U. S., 17, which interprets portions of the National Labor Relations Act and is authority for the proposition that Section 8 (a) (3) of the act "does not outlaw all encouragement or discouragement of membership in labor organizations; **only such as is accomplished by discrimination is prohibited**." Counsel concludes that

no unfair labor practice under NLRA is alleged or proved in the instant case because there has been no effort toward discrimination by Richman.

The court observes, however, that when the temporary injunction was granted, before the decision of the Garner case and others mentioned above, this court acted because the picketing was "for the unlawful purpose of forcing an employer to force that unionization of its help which for years that same help has refused at the behest of Amalgamated."

Sec. 8 (b) (1) of NLRA makes it an unfair labor practice for a union to coerce employees in the exercise of their rights under Sec. 7, among which is the right to join or to refrain from joining a labor organization. The court cannot conceive of the act even under the strictest interpretation, countenancing an effort by a union to do indirectly (coerce the employer to force unionization) what it cannot legally do directly (coerce employees to join the union). Here the question of discrimination would in no way be involved; the term is not used in this subsection of the law.

Commenting on the decision of the Court of Appeals in Grimes & Hauer, Inc., counsel for Richman said: "If it was actually held in the Grimes & Hauer, Inc., case that picketing for the purpose of forcing or attempting to force an employer to force its employees into a union constitutes an unfair labor practice under the proscription of Sec. 8 (b) (2) of NLRA, as amended, such holding is obviously based on a misconception that the Garner case so requires and is erroneous because * * * the Garner case lays down no such requirement." Be that as it may, the Ohio Supreme Court has now affirmed the decision in question and apparently interpreted the federal statute to mean the same thing as did the Court of Appeals.

As to National Electrical Service Corp., above cited, Richman's counsel says that "the concluding paragraph of the opinion (quoted above) in the Kentucky case erroneously enlarges the holding of the Garner case." The court cannot subscribe to this conclusion, feeling that the opinion goes no further than does that of the Ohio Supreme Court in Grimes & Hauer, Inc.

Every case differs in some particular from every other case. Distinctive features can always be found. However basic principles remain the same and apply to many combinations of fact. The similarities between the facts in the instant case and in the Garner case are striking, and what differences there are are not controlling.

In this case as in Garner, no labor dispute or strike was in progress, and the employer had not objected to its employees joining the union. Here, as in Garner, the union kept pickets at the employers' places of business "to coerce (Richman) into compelling or influencing their employees to join the union." Here, as in Garner, "the picketing was peaceful, but (Richman's) business fell off * * * because * * * (others) refused to cross the picket line." Here, as in Garner, the Common Pleas Court enjoined the picketing as in violation of state law. In Garner the Supreme Court held (346 U. S., 485, syllabus):

"Petitioner's grievance was within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices under the Labor Management Relations Act, and was not subject to relief by injunction in the state courts."

This court is reluctant to disturb so salutary an order as that made when the temporary injunction was granted. Yet the court simply cannot fly in the face of so clear and unequivocal an opinion as that of Grimes & Hauer, Inc., in the appellate courts of Ohio, and the Garner case in the United States Supreme Court.

Had the court had the benefit of these holdings when the question of jurisdiction was first raised it doubtless would have arrived at the same conclusion then that it now reaches. In view of the decisions in the case cited,—handed down since the granting of the temporary restraining order herein, it is inescapable that this court does not have jurisdiction of the subject matter of the action. Richman's remedy lies with the National Labor Relations Board.

For the above reasons the court dissolves the temporary restaining order of April 20, 1953, and dismisses Richman's petition. An order based upon this decision may be drawn.

The plaintiff excepts.